**In re BRAUDE JEWELRY CORP., Debtor.**

**No. 00 B 4596.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Sept. 30, 2005.

Allen J. Guon, Shaw, Gussis, Fishman, Glantz, Wolfson & Towbin LLC, Chicago, IL, for Robert B. Katz, Chapter 7 Trustee.

Gregory J. Stull, Special Assistant to the United States Attorney, Chicago, IL, for the IRS.

Thomas C. Wolford, Neal Gerber & Eisenberg LLP, Chicago, IL, for the Zeller 211 Trust and Equity Properties and Development, L.P.

Faith Dolgin, Assistant Attorney General, Revenue Litigation Bureau, Chicago, IL, for the Illinois Department of Revenue.

## MEMORANDUM OPINION

PAMELA S. HOLLIS, Bankruptcy Judge.

This matter comes before the court on the Trustee's Omnibus Objection to Claims Asserted Against Incorrect Debtor. Zeller 211 Trust and Equity Properties and Development, L.P. (collectively, "Landlords") as well as the Internal Revenue Service and Illinois Department of Revenue responded to the Omnibus Objection. A portion of the Omnibus Objection was sustained by orders entered on September 2 and October 21, 2004. The Omnibus Objection remains pending as to Claim Nos. 142A, 234, 238 and 239.[1] The court heard oral argument on the matter on February 15, 2005. Having reviewed the memoranda of law and considered the positions set forth at oral argument, the court concludes that there are no disputes of material fact and, for the reasons set forth below, overrules the pending portions of the Trustee's Omnibus Objection.

## BACKGROUND

On February 17, 2000, Braude Jewelry Corp. filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, commencing Case No. 00 B 4596 (*"Braude I"*). On December 12, 2000, *Braude I* confirmed its Chapter 11 plan of reorganization (the "Plan"). The Plan immediately became effective and Braude Jewelry Corp. became the Reorganized Debtor pursuant to Plan ¶ 1.35.

According to Article XII of the Plan, Braude Jewelry assumed the store lease for Marquette Mall in Michigan City, Indiana, and the office lease at 211 East Ontario Street in Chicago, Illinois. The Plan provided that any defaults under the

---

1. In his February 8, 2005 reply, the Trustee indicated in footnote 2 that he had resolved the Omnibus Objection to Claim Nos. 91 and 189, brought by the Illinois Department of Revenue. The Trustee further indicated that the parties would submit a stipulation to the court resolving the objection. This stipulation must be submitted to chambers within 14 days from the entry of this memorandum opinion on the docket, or the Omnibus Objection will be overruled as to Claim Nos. 91 and 189.

The attorney for the Internal Revenue Service indicated at oral argument that Claim No. 95 had been superseded by Claim No. 95A, and that he agreed with the Trustee that Claim 95(A) should be allowed as a general unsecured penalty claim under 11 U.S.C. § 726(a)(4) in the amount of $4,867.77. According to footnote 4 of the Trustee's reply, the Trustee and the Internal Revenue Service also reached agreement that the portions of Claim No. 239 relating to penalties due on post-petition withholding and FICA taxes for the periods ending March 31, 2000 ($12,950.99) and September 30, 2000 ($562.00) should be allowed as a chapter 11 administrative claim in the amount of $13,512.99. The only remaining dispute between the Trustee and the Internal Revenue Service concerns the portion of Claim No. 239 that arose from the post-confirmation business operations of the Reorganized Debtor during *Braude II*, which are penalties due on withholding and FICA taxes for the periods ending September 30, 2001 ($1,703.42) and December 30, 2001 ($2,253.58).

assumed leases would be paid in full in cash in three monthly installment payments, starting thirty days after the effective date.

On July 9, 2001, even though *Braude I* was still pending, the Reorganized Debtor filed a new Chapter 11 petition, thus commencing Case No. 01 B 23984 ("*Braude II*"). *Braude I* was closed just 15 days later, on July 24, 2001.

On October 15, 2001, while *Braude II's* Chapter 11 case was pending, the United States Trustee moved to reopen *Braude I* and to set a hearing on converting the case to Chapter 7. An order granting the motion to reopen was entered on October 29, 2001, and *Braude I* was converted to Chapter 7 effective January 10, 2002. Robert Katz was appointed as the Chapter 7 Trustee. It appears that *Braude I* was reopened and converted to a Chapter 7 to permit the Trustee to pursue avoidance actions. The Individual Estate and Property Record and Report filed on April 8, 2005, indicates that the Trustee is holding approximately $458,000.00 as a result of various successful preference actions litigated in *Braude I*. Meanwhile, *Braude II* progressed through its bankruptcy case as a liquidating Chapter 11. The Reorganized Debtor ceased doing business and retained a liquidating agent in *Braude II*. In January and February 2002, it rejected the Marquette Mall and 211 East Ontario Street leases. On March 6, 2002, the Reorganized Debtor moved for dismissal. *Braude II* was dismissed on August 13, 2002, with an effective date retroactive to March 28, 2002.

*Braude I* is still pending as this Chapter 7 case. On July 28, 2004, the Trustee filed his Omnibus Objection to certain claims, arguing that they were asserted against the wrong debtor. In essence, the Trustee states that because the Landlords' leases were transferred to the Reorga-

nized Debtor, which later filed its own Chapter 11 case, the lease liabilities were also transferred from *Braude I* to *Braude II*. Because *Braude II* had control over the leases, *Braude I* had no liability to the Landlords. Further, the Trustee argues that *Braude I* is not liable for withholding penalties asserted by the Internal Revenue Service that arose from the business operations of *Braude II*. The Trustee asserts that *Braude I* and *Braude II* are separate entities for tax purposes.

## LEGAL DISCUSSION

■ To fully understand the dispute before the court, it is helpful to begin with a published case with similar, although not identical, facts. In *In re Troutman Enterprises, Inc.*, 253 B.R. 8 (6th Cir. BAP 2000), the Chapter 11 debtor confirmed a plan of reorganization and emerged as a reorganized debtor. After the reorganized debtor defaulted under the plan, a creditor moved to convert the Chapter 11 case to Chapter 7, which motion was granted. While the Chapter 7 case was still pending (*Troutman I*), four other creditors filed an involuntary Chapter 7 case against the reorganized debtor (*Troutman II*). The basis of their petition was that the reorganized debtor had failed to pay their claims under the terms of the confirmed plan of reorganization.

The bankruptcy court dismissed *Troutman II* on the grounds that 11 U.S.C. § 348 limited creditors with plan claims—claims arising from the plan of reorganization—to whatever recovery they could obtain in *Troutman I*. The Bankruptcy Appellate Panel disagreed, finding that the creditors were "entitled to assert the plan claims against the reorganized debtor." 253 B.R. at 10.

The matter before this court takes *Troutman's* fact pattern one step further. *Braude II* has already been administered

and dismissed, and while creditors with plan claims may have been entitled to assert those claims against the Reorganized Debtor, the time for doing so has passed. Are they then barred, under *Troutman,* from pursuing plan claims in *Braude I?*

The answer must be no. *Troutman* does not stand for the proposition that creditors with plan claims can *only* assert those claims against a reorganized debtor in a second bankruptcy case. Instead, the *Troutman* panel acknowledged that

> [i]f a reorganized debtor defaults under a plan, creditors have *several options,* including enforcing the plan terms in any court of competent jurisdiction. . . .
> *As an additional option,* plan creditors may, under certain circumstances, file an involuntary bankruptcy proceeding against a reorganized debtor under Bankruptcy Code § 303.

253 B.R. at 11–12 (emphasis added). The reorganized debtor in *Troutman* had sought dismissal of the second case on the grounds that the plan creditors had no claims against it and so had no standing to commence an involuntary proceeding. The *Troutman* panel disagreed, holding that 11 U.S.C. § 348 "determines the nature of the Petitioning Creditors' claims in the Converted Case, but does not eliminate their claims against the Reorganized Debtor." *Id.* at 12–13. Similarly in this dispute, creditors with plan claims may have been able to recover against the Reorganized Debtor, but another option available to them was to seek recovery from the Chapter 7 estate in the converted case.

In this case, allowing the Landlords to recover from both the bankruptcy estate and the Reorganized Debtor makes sense not just under bankruptcy law, but also under the law of assumption and assignment. In this case, pursuant to the Plan, the Reorganized Debtor *assumed* the leases under which the estate was obligated to pay rent. The Trustee argues that because of that assumption, the leases were vested in the Reorganized Debtor, and that the estate had no further obligations to the Landlords under the Plan.

■ However, while the Plan provided for assumption, it did not provide for *assignment* of the estate's obligations. Under 11 U.S.C. § 365(k), an assignment might have relieved *Braude I* of liability:

> Assignment by the trustee to an entity of a contract or lease assumed under this section relieves the trustee and the estate from any liability for any breach of such contract or lease occurring after such assignment.[2]

Mere assumption, however, does *not* relieve the estate of liability. Instead, assumption simply provided the Landlords with another entity from which they could recover, the Reorganized Debtor.

The Trustee argues that Judge Barliant's decision in *In re T.S.P. Industries* supports his position that through the Plan, the estate had been relieved of liability to the Landlords. 117 B.R. 375 (Bankr.N.D.Ill.1990). In *T.S.P. Industries,* Judge Barliant declined to convert a failed post-confirmation Chapter 11 case to Chapter 7 because there would be no assets in the Chapter 7 estate for a trustee to administer. "Put another way, once property has vested in the Debtor, conversion will not revest that property in the estate." *Id.* at 378. Consequently, dismissal was in the best interests of creditors.

---

2. While this section clearly states that an assignment would relieve the estate of liability, an assignment between different forms of the same entity (for example Braude I and II) might not be covered by this provision.

While the Trustee is correct that conversion would not revest property in a Chapter 7 estate, he has read too far into *T.S.P. Industries*. Judge Barliant did not make any holding regarding, or even discuss in *dicta*, the effect of confirmation on *claims* against the estate. Instead, he determined that "[w]hat is most important here is the effect of confirmation on the property of the estate." *Id.* at 377. The terms of the *T.S.P. Industries* confirmed plan provided that unsecured creditors would be paid by the reorganized debtor. When the reorganized debtor defaulted, these were the creditors whose best interests Judge Barliant considered under 11 U.S.C. § 1112. If he converted the case, the creditors could be paid through distribution of estate assets according to the Chapter 7 priority scheme in § 726. Since there were no assets that could be distributed according to that scheme, Judge Barliant declined to convert the failed Chapter 11. This decision, however, said nothing about the validity of those creditors' *claims* against the estate.

Clearly, more than one entity may be liable for a debt. There are all sorts of situations in which more than one person has the obligation to pay: cosignors on a lease; guarantors; joint and several tortfeasors. Generally, a creditor may choose the obligor from whom they wish to recover. That choice may be driven by considerations such as which potential defendant has the deepest pockets, or is easiest to serve with process, or with whom the creditor needs to preserve an ongoing relationship. Liability on the debt does not always follow the asset, such as when a parent cosigns for an automobile purchase by an adult child. The car goes to the child, but the parent is still liable for the debt if the child does not pay. Unless there is a contractual or statutory provision that liability can be transferred away, as in § 365(k), the obligation to the creditor remains with each one of the debtors until the debt is satisfied.

█ Having concluded that plan creditors, including the Landlords, hold claims in the converted case, the question for the court then becomes, what is the priority of those claims in *Braude I*? The Landlords assert that when a Chapter 11 debtor in possession assumes a lease pursuant to a plan of reorganization and later converts to Chapter 7, the claim arising from the subsequent breach is an administrative claim. As 11 U.S.C. § 365(g) provides, in relevant part:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

. . . .

(A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112, 1208, or 1307 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

In this case, the leases were assumed pursuant to the Plan. Approximately one year after assumption, *Braude I* converted

to Chapter 7, and the leases were subsequently rejected in *Braude II*. Although the formal act of rejection occurred in *Braude II*, the assumed leases were still breached for purposes of *Braude I*. "Any breach of the assumed obligations, whether in the form of a default or a formal rejection of the lease thereby constitutes a breach by the postpetition debtor of postpetition obligations." *In re Pearson*, 90 B.R. 638, 642 (Bankr.D.N.J.1988) (footnote omitted). *See In re Norwegian Health Spa, Inc.*, 79 B.R. 507, 509 (Bankr.N.D.Ga. 1987) ("[I]t is the act of assumption which results in the lease obligations being administrative expenses and not the act of formal rejection."). So even though the leases were not formally rejected in *Braude I*, they were breached after having been assumed by the Plan confirmed in that case.

Since the leases were breached or rejected after having been assumed, the Landlords are entitled to an administrative priority for the claims arising from that breach. As Judge Plunkett stated: "Section 365(g)(2) has been interpreted to mean that a creditor whose executory contract or lease has been assumed has an administrative priority if the debtor thereafter breaches the contract." *In re Jartran*, 87 B.R. 525, 528 (N.D.Ill.1988), *aff'd*, 886 F.2d 859 (7th Cir.1989). *See In re World Wines, Ltd.*, 77 B.R. 653, 656–657 (Bankr.N.D.Ill.1987) (footnote omitted) ("Leases which are assumed post-petition and then subsequently rejected are accorded administrative expense priority under Section 365(g)(2).").

In *Jartran*, the debtor assumed a lease through its Chapter 11 plan of reorganization. A second Chapter 11 was filed in recognition of the fact that the reorganized debtor "was unable to continue operating as a going concern." *Id.* at 527. Judge Plunkett was asked to decide the priority of the landlord's claim in that second case:

The debtor in *Jartran II* never assumed the Master Leases. To the contrary, the Master Leases have been rejected in *Jartran II*. Thus, Fruehauf is not entitled to an administrative claim pursuant to section 365(g)(2)(A); rather, Fruehauf is a general, pre-petition creditor pursuant to section 365(g)(1).

*Id.* at 528. Similarly, the Reorganized Debtor in *Braude II* never assumed the leases, but only rejected them. In *Braude II*, the Landlords would only have been general, pre-petition creditors.

Rather than deciding what priority the Landlords' claims would have in *Braude II*, however, this objection is brought in *Braude I*. The court must decide what priority the claims have in *Braude I*. In *dicta*, however, Judge Plunkett provided the correct answer:

If *Jartran II* is dismissed and *Jartran I* is converted, then the rights and priorities of Jartran's creditors will be determined in *Jartran I*. Fruehauf will then have an administrative priority for its claim for damages and expenses because the Master Leases were assumed and subsequently rejected before conversion. 11 U.S.C. § 365(g)(2)(A).

*Jartran*, 87 B.R. at 527. *See also In re Multech Corp.*, 47 B.R. 747, 750 (Bankr. N.D.Iowa 1985) ("[S]ection 365(g) clearly indicates that the act of assumption creates an administrative expense obligation of the particular proceedings in which the contract or lease was assumed. Consequently, if a lease is assumed in Chapter 11 proceedings, the liabilities flowing from the rejection of that lease will ever after be regarded as a Chapter 11 administrative expense.").

The leases were assumed pursuant to the Plan in *Braude I*. A subsequent breach entitles the Landlords to administrative

expense treatment in *Braude I*. If instead the filing of a subsequent case voided the Landlords' standing in *Braude I*, other claimants might see an opportunity to game the system. Unsecured creditors could wipe out the administrative expense claims held by landlords with assumed leases simply by filing a second, involuntary case. A landlord's claim against the first estate and the priority of that claim must not turn on whether a second case is filed.

For all of these reasons, the court overrules the Trustee's objection to the Landlords' claims, and finds that the Landlords hold an administrative claim in *Braude I*.

■ The court now turns to the Trustee's objection to the claim of the Internal Revenue Service. The only remaining dispute between the Trustee and the Internal Revenue Service concerns the portion of Claim No. 239 that arose from the post-confirmation business operations of the Reorganized Debtor, which are penalties due on withholding and FICA taxes for the periods ending September 30, 2001 ($1,703.42) and December 30, 2001 ($2,253.58). The Trustee objects on the grounds that this claim cannot be asserted against *Braude I* and is the sole obligation of *Braude II*. The Service responds by asserting that not only is this claim valid against *Braude I*, but it is a post-confirmation, pre-conversion liability that is to be treated as a prepetition claim pursuant to § 348(d).[3]

In *U.S. v. Redmond*, 36 B.R. 932 (D.Kan.1984), the debtor confirmed a plan of reorganization, struggled for approximately one year, and then converted the case to Chapter 7. The Internal Revenue Service filed claims for unpaid employment and unemployment taxes for which the reorganized debtor had become liable after confirmation and before conversion. *Redmond* considered the priority of those unpaid taxes and determined that as post-confirmation liabilities, they were not incurred as actual, necessary costs and expenses of preserving the estate. As a result, they were not entitled to administrative expense status under 11 U.S.C. § 503(b)(1)(B). However, those tax liabilities were to be "treated the same as prepetition claims .... [and were] entitled to a sixth priority under section 507(a)(6)." *Redmond*, 36 B.R. at 934.

*Redmond's* fact pattern differs from the situation before the court in only one respect—the reorganized debtor in that case did not file a new Chapter 11. The Trustee has presented no plausible arguments why the filing of a second case should relieve the original estate of liability. The commencement of a new bankruptcy case pulls assets into the new bankruptcy estate, but as the court explained previously, liability on a debt does not always follow an asset. Unless there is a contractual or statutory provision that liability can be transferred away, as in § 365(k), the obligation to a creditor remains with a debtor until the debt is satisfied.

The Trustee argues that these tax claims are not liabilities of the estate "since Reorganized Braude is a distinct legal entity from the Debtor and its Estate." Trustee's Reply, February 8, 2005

---

3. The Service admits on page 7 of its January 11, 2005 reply that the penalties incurred during the third and fourth quarters of 2001 were "erroneously classified as administrative claims [and] are properly classified as a post-petition non-administrative claim subject to allowance as a pre-petition claim under 11 U.S.C. § 348(d)." That subsection provides that claims arising post-petition and prior to conversion which are not administrative claims "shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."

at 2–3. For tax purposes, this argument is incorrect. The Reorganized Debtor is *not* a separate taxable entity from the corporation that filed *Braude I.* According to 26 U.S.C. § 1399, "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code." Section 1398 is not applicable in the instant case, because a corporation, as opposed to an individual, is the debtor. *See In re Parsons,* 272 B.R. 735, 750 (D.Colo.2001) (§ 1398 provides that when an individual files a Chapter 11 bankruptcy case, the bankruptcy estate is treated as a separate taxable entity distinct from the individual debtor).

Instead, "the language of 26 U.S.C. § 1399 and its legislative history lead to the conclusion that the bankruptcy estate is not a separate entity from the corporate debtor for tax purposes." *In re Callahan,* 304 B.R. 743, 748 (W.D.Va.2004). Consequently, the Reorganized Debtor in *Braude II* is the same legal entity, for tax purposes, as the entity that remains in Chapter 7 in *Braude I.*

Moreover, the Service points out that even if the Reorganized Debtor were treated as a distinct legal entity, and was *also* liable on the post-confirmation tax debt, such treatment would not relieve the *Braude I* estate from such liability. This is consistent with the court's previous observation that more than one entity may be liable on a debt at the same time.

For all of these reasons, the Trustee's objection to the remaining portion of Claim No. 239 is overruled.

### CONCLUSION

Having reviewed the memoranda of law and considered the positions set forth at oral argument, for the reasons set forth above, the court overrules the pending portions of the Trustee's Omnibus Objection.