**In re Douglas E. WELLS, Debtor.**

**No. 06–14331.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Nov. 5, 2007.

Gregory M. Wetherall, Cincinnati, Oh, For Debtor.

## MEMORANDUM OF DECISION ON ORDER GRANTING ADMINIS-TRATIVE EXPENSE

JEFFERY P. HOPKINS, Bankruptcy Judge.

Presently before the Court is: (1) the Motion Of Mazda American Credit For Allowance Of Its Administrative Expense Claim And For An Order Requiring The Ch. 13 Trustee To Adjust Distributions Until Mazda's Administrative Expense Claim Has Received Equal Pro–Rata Treatment ("Motion") (Doc. 38); and (2) the Amended Request Of Mazda American Credit For Payment Of An Administrative Expense ("Amended Request") (Doc. 51). By its Motion and Amended Request, Mazda American Credit ("Mazda") seeks allowance of an administrative expense claim in the amount of $4,021.18. The Debtor opposes the requested relief.

*THE LEASE, THE PLAN, AND THE DEFAULT*

At the time of filing, the Debtor and Mazda were parties to a lease for a 2004 Mazda RX8. The Debtor proposed a chapter 13 plan whereby the lease would be assumed and the Debtor would make direct payments to Mazda outside the plan. The plan was confirmed without objection. Pursuant to the plan, property of the estate vested in the Debtor upon confirma-

tion. Shortly after confirmation, the Debtor defaulted and Mazda obtained relief from the automatic stay. Following recovery and auction of the vehicle, Mazda seeks payment of a $4,021.18 deficiency as an administrative expense.

### THE TREND ALLOWING ADMINISTRATIVE EXPENSE TREATMENT

Until recently, case law reflected a trend towards awarding an administrative expense claim to lessors of personal property based upon the post-assumption default by chapter 13 debtors. *See In re Enderle*, 352 B.R. 444 (Bankr.E.D.Mich.2006); *In re Smith*, 315 B.R. 77 (Bankr.W.D.Ark.2004); *In re Masek*, 301 B.R. 336 (Bankr.D.Neb. 2003); *In re Wright*, 256 B.R. 858 (Bankr. W.D.N.C.2001); *In re Hall*, 202 B.R. 929 (Bankr.W.D.Tenn.1996); *In re Pearson*, 90 B.R. 638 (Bankr.D.N.J.1988). These decisions are predicated upon 11 U.S.C. § 365(g)(2)(A), which provides in relevant part:

> [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—
>
> . . .
>
> (2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—
> (A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, at the time of such rejection[.]

The seminal case on this issue, a chapter 11 case, provides the rationale for the allowance of an administrative expense:

> The logic behind granting administrative expense status to liabilities flowing from the rejection of an assumed contract or lease is quite simple. The filing of a bankruptcy creates a new judicial entity that is separate and apart from the Debtor which existed prior to bankruptcy proceedings. . . . The assumption of an executory contract by a Debtor-in-Possession is an act of administration creating an obligation of the estate which is legally distinct from the obligations that existed prior to an assumption of the contract. In contrast to the rejection of [an] unassumed contract which arises from a transaction with the prebankruptcy Debtor, the rejection of an assumed contract arises directly from a transaction with the Debtor-in-Possession.

*In re Multech Corp.*, 47 B.R. 747, 750–51 (Bankr.N.D.Iowa 1985).

### BENN

The Debtor relies upon *Ford Motor Credit Co. v. Benn*, 362 B.R. 1 (E.D.Mich. 2007). *Benn* represents a departure from the trend of cases mentioned. For the reasons outlined below, the Court disagrees with the reasoning of *Benn*.

*Benn* involved a district court review of an issue arising in three substantially similar bankruptcy cases. The material facts of *Benn* are virtually identical to the facts in this case. All of the debtors were parties to unexpired vehicle leases; with Ford Motor Credit Company ("Ford"). The confirmed chapter 13 plans provided that the leases would be assumed and the debtors would make direct payments to Ford outside the plan. Postconfirmation, the debtors defaulted and Ford obtained relief from the automatic stay. After liquidating the vehicles at auction, Ford filed motions for allowance of administrative expense claims. The bankruptcy court denied Ford's motions, primarily on the grounds of res judicata. Alternatively, the bankruptcy court relied upon the fact that property of the estate vested in the debtors upon confirmation pursuant to the express terms of the confirmed plans. Given

that estate property vested in the debtors, the bankruptcy court concluded that the leases provided no benefit to the estate. On appeal, the district court affirmed the decision of the bankruptcy court.

### 1. Benefit to the Estate

■ The *Benn* court noted that administrative expenses are governed by 11 U.S.C. § 503. The court then applied the two-part test for administrative expenses set forth in *In re United Trucking Service, Inc.*, 851 F.2d 159 (6th Cir.1988). In *United Trucking,* the Sixth Circuit determined that a creditor seeking an administrative expense claim must prove that the debt arose from a transaction with the debtor and benefitted the estate. *Id.* at 161–62. Applying this standard, the district court in *Benn* agreed with the bankruptcy court's conclusion that administrative expenses were not warranted because there was no benefit to the estates. Specifically, the debtors did not need the vehicles to preserve their bankruptcy estates when they could have found alternative transportation at a lower cost. *Benn,* 362 B.R. at 5.

Respectfully, this Court believes that *United Trucking* is not the applicable standard. Significantly, the lease in *United Trucking* was never assumed. As such, the case did not turn on § 365(g)(2)(A) or the *Multech* analysis.

The applicable Sixth Circuit decision is *In re Revco D.S., Inc.*, No. 93–3597, 1994 WL 376884 (6th Cir. July 18, 1994). In *Revco,* the Sixth Circuit noted that § 365(g) entitles a lessor to an automatic administrative expense claim under § 502(b) if a debtor breaches an assumed lease. *Id.* at *1. Therefore, the benefit to the estate analysis set forth in *United Trucking* is irrelevant to the issue of whether the breach of an assumed lease gives rise to an administrative expense.

### 2. Res Judicata

The other basis for the *Benn* decision is res judicata and the binding effect of a confirmed plan under 11 U.S.C. § 1327(a). Because the confirmed plans provided that the debtors would pay Ford directly, the district court agreed with the bankruptcy court that § 1327(a) precluded Ford from seeking payment from the estate. *Benn,* 362 B.R. at 6.

*Benn* does not stand alone on this point. *In re White,* 370 B.R. 713 (Bankr. E.D.Mich.2007), decided after *Benn,* reaches the same conclusion. *White* involved another vehicle lease with Ford where the debtors confirmed a plan that assumed the lease and provided for direct payment to Ford by the debtors outside the plan. The plan also provided that property of the estate vested in the debtors upon confirmation. At the end of the lease term, the Debtors returned the vehicle to Ford. Thereafter, Ford moved for an administrative expense claim based upon excess mileage and other miscellaneous charges. The court denied the motion on the grounds of res judicata. Because the confirmed plan did not classify Ford as an administrative claimant, the court concluded that Ford could not later seek a different treatment of its claim. *Id.* at 714, 718.

### A. Scope of Binding Effect of Plan

■ The binding effect of a confirmed plan is subject to limitations.

[W]here a plan fails to state its intended effect on a given issue, any ambiguity may reflect that that issue was not considered by the bankruptcy court, and/or that the parties did not contemplate that the plan would resolve the issue. Additionally, it may offend due process to confer preclusive effect on matters not explicitly determined in a confirmed plan.

*In re Summerville,* 361 B.R. 133, 141 (9th Cir. BAP 2007). Courts therefore do not preclude subsequent litigation unless, among other things, the second action raises the same issue that was determined by the confirmed plan. *See In re Layo,* 460 F.3d 289, 292 (2d Cir.2006). Consequently, the plan will not preclude subsequent litigation unless the latter involves the same "nucleus of operative fact." *Id.*

■ Respectfully, this court does not believe that a § 365(g)(2)(A) motion raises the same nucleus of operative fact presented at confirmation of a plan that assumes an unexpired lease. By its express terms, § 365(g)(2)(A) does not apply until some point after confirmation. As such, there is no reason for the creditor to seek or litigate administrative treatment under § 365(g)(2)(A) at the time of confirmation. If a creditor attempted to do so, the issue would be summarily dismissed for lack of ripeness.

### B. Binding Effect of Assumption

Although the issue raised under § 365(g)(2)(A) is not litigated at confirmation, the issue of whether the lease is assumed by the estate is actually litigated. Consequently, this is the issue that is entitled to preclusive effect. Neither *Benn* nor *White* address the binding effect of assumption upon the bankruptcy estate.

■ It is well-established that the act of assumption obligates the bankruptcy estate. *In re Dehon, Inc.,* 352 B.R. 546, 565–66 (Bankr.D.Mass.2006) ("non-debtor party is entitled to compensation, *from the bankruptcy estate,* for all monetary defaults under the contract"); *In re UAL Corp.,* 346 B.R. 456, 467 (Bankr.N.D.Ill. 2006) (assumption commits the estate to full performance under the contract); *In re Braude Jewelry Corp.,* 333 B.R. 156, 159 (Bankr.N.D.Ill.2005) (assumption provides lessor with another entity from which it may recover); *In re Vantage Investments, Inc.,* 328 B.R. 137, 143 (Bankr.W.D.Mo. 2005) (assumed contract is deemed an obligation of the estate); *see also* 2 Norton Bankr.Law & Practice 2d § 39:27 (2007) ("If an executory contract or unexpired lease is assumed after the case is commenced, the assumption creates a new administrative obligation of the estate."). Even if a plan requires a debtor to make direct payments to a lessor outside the plan, the assumption of the lease obligates the estate as a guarantor. Otherwise, the act of assumption is meaningless. Therefore, once a lease is assumed by plan confirmation, the debtor, the trustee and all creditors are bound by the implications of the assumption. If an interested party does not want the estate to be liable for a post-assumption breach, then that party must object to confirmation.[1]

In this case, it is the Debtor who opposes the binding effect of the Mazda lease assumption. Pursuant to § 1327(a), the Debtor is bound by his decision to obligate the estate on the lease in the event of his default.

*WHITE'S ANALYSIS OF § 365(G)(2)(A)*

Whereas *Benn* does not mention § 365(g)(2)(A), *White* does. *White* concluded that § 365(g)(2)(A) was inapplicable because the debtors in that case never rejected the lease. *White,* 370 B.R. at 720. The court drew a distinction between

---

1. *Benn* reasons that "allowing Ford to gain priority over other creditors who expected to be paid by the Trustee from the Debtors' estates would be manifestly unfair to those creditors." This Court disagrees. Those creditors could have objected to confirmation of a plan that proposed to assume the lease and render the estate a guarantor of the debtor's direct payments. If a creditor fails to object to the assumption, it has only itself to blame.

breach and rejection, stating that the latter requires a motion and court approval. *Id.* In support, the court cited *Thinking Machines Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machines Corp.)*, 67 F.3d 1021, 1025–28 (1st Cir.1995). Respectfully, this Court does not believe that a motion and court approval are needed to reject an assumed lease. *Thinking Machines* was not an assumption case. The debtor never assumed the lease in the first place. The decision addressed § 365(d)(3) and the effective date of the rejection of an unassumed commercial lease. The First Circuit concluded that rejection was effective upon court approval and not the time at which the trustee first decides to reject the unassumed lease.

■ When a lease has been assumed, "rejection" under § 365(g)(2)(A) occurs when the lease is breached. *See In re Klein Sleep Prods., Inc.*, 78 F.3d 18, 26 (2d Cir.1996) ("[T]he rejection of an assumed lease—that is, breach of contract committed by the trustee or debtor-in-possession while administering the estate—gives rise to a debt entitled to the same administrative expense priority."); *Braude Jewelry*, 333 B.R. at 161; *Pearson*, 90 B.R. at 642 ("Any breach of the assumed obligations, whether in the form of a default or a formal rejection of the lease, thereby constitutes a breach by the postpetition debtor of postpetition obligations."); *In re Norwegian Health Spa, Inc.*, 79 B.R. 507, 509 (Bankr.N.D.Ga.1987) ("If a debtor breaches an assumed lease, the breach occurs post-petition, whether or not the debtor formally rejects the lease and triggers the application of § 365(g)."); 2 Norton Bankr.L. & Prac.2d § 39:25 ("A 'rejection' following postpetition assumption of an unexpired lease is nothing more than a post-assumption default under the lease[.]"). Therefore, § 365(g)(2)(A) applies when a chapter 13 debtor breaches an assumed lease.

### WHITE'S APPLICATION OF NOLAN

As noted above, *White* determined that the binding effect of plan confirmation under § 1327(a) precluded Ford from seeking an administrative claim. *White* then considered whether Ford could prevail if its motion were treated as a motion to modify the plan under 11 U.S.C. § 1329(a). *White* concluded that *In re Nolan*, 232 F.3d 528 (6th Cir.2000) precluded such a modification.

### 1. *Nolan*

In *Nolan*, the Sixth Circuit held that a chapter 13 debtor could not modify a confirmed plan's § 1325(a)(5) treatment of a secured claim. Postconfirmation, the debtor wanted to surrender the collateral, discontinue plan payments on the creditor's secured claim, and pay the entire deficiency as an unsecured claim.

### 2. Applicability of *Nolan*

Because § 1327(a) does not preclude Mazda from seeking an administrative expense, as discussed above, plan modification is unnecessary. For this reason alone, *Nolan* is inapplicable. Nonetheless, for the sake of clarity, the Court will address the distinctions between *Nolan* and the pending case.

In *Nolan*, the confirmed plan made an express determination of the creditor's secured claim that the debtor attempted to modify postconfirmation. The lease assumption issue before this Court and *White* is different. The confirmed plan in this case did not expressly state that Mazda is not entitled to an administrative claim in the event of default. Consequently, Mazda is not seeking to modify an express determination made under the

confirmed plan.[2] *Nolan* is distinguishable for the same reasons that § 1327(a) does not preclude the instant litigation.[3] The issue was never litigated at confirmation.

CONCLUSION

For the foregoing reasons, this Court finds the majority line of decisions to be more persuasive than *Benn* and *White*. Accordingly the Motion and Amended Request will be **GRANTED**. Mazda will be awarded an administrative expense claim in the amount of $4,021.18 pursuant to § 365(g)(2)(A). An order to this effect will be entered.

---

**2.** Some may argue that Mazda seeks to contravene the plan's provision that payments to Mazda would come directly from the Debtor. However, a plan provision providing for direct payment is not the same as a plan provision providing that Mazda is limited to payment from the Debtor alone. The Debtor's plan did not limit Mazda's recourse to the Debtor alone. As discussed above, the plan's assumption of the lease bound the estate as a guarantor of the lease in the event of default. Mazda's request is wholly consistent with the binding effect of the lease assumption.

**3.** *Nolan* was predicated upon § 1327(a). *See Nolan*, 232 F.3d at 533.