SUTTON, Circuit Judge,
dissenting.
I see this case differently. The confirmed plan does not say one way or the other whether Ford may receive administrative expenses for the Parmenters’ default. Given the silence of the plan on the issue at hand, res judicata principles offer no answer — not even a hint — about how to resolve this claim. Instead, we must start with the following first principles established by the Bankruptcy Code and ease law:
• Chapter 11 debtors-in-possession and Chapter 13 debtors may assume unexpired leases — like the ear lease at issue here. See 11 U.S.C. § 365(d)(2) (trustees); id. § 1107(a) (debtors-in-possession); id. § 1322(b)(7) (Chapter 13 debtors); see also 1 Keith M. Lundin, Chapter 13 Bankruptcy § 56.1, at 56-1 to -2 (3d ed. 2000 & Supp.2004).
*611 • When a Chapter 13 debtor assumes an unexpired lease, either the trustee may become the disbursing agent for the lease payments or, as happened here, the debtor may pay the creditor directly. See 11 U.S.C. § 1326(c).
• When a Chapter 11 debtor-in-possession assumes an unexpired lease and later defaults on the lease payments, the court may treat the resulting deficiency as an administrative-expense claim. See In re Merry-Go-Round Enters., Inc., 180 F.3d 149, 156 (4th Cir.1999); In re Klein Sleep Prods., Inc., 78 F.3d 18, 28 (2d Cir.1996); In re Frontier Props., Inc., 979 F.2d 1358, 1367 (9th Cir.1992); Collier on Bankruptcy Practice ¶ 365.09; 2 William L. Norton, Bankruptcy Law & Practice (Third) § 46:25; see also N.L.R.B. v. Bildisco & Bildisco, 465 U.S. 513, 531-32, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); In re Revco D.S., Inc., No. 93-3597, 1994 WL 376884, at *1 n. 4 (6th Cir. July 18, 1994); In re Airlift Int’l, Inc., 761 F.2d 1503, 1509 n. 5 (11th Cir.1985).
• When a Chapter 13 debtor assumes a lease and the trustee serves as the disbursing agent of the lease payments, the case law treats deficiencies arising from post-confirmation defaults as administrative expenses. See In re Masek, 301 B.R. 336, 338 (Bankr.D.Neb.2003); In re Pearson, 90 B.R. 638, 642 (Bankr.D.N.J.1988); see also 4 Lundin, supra, § 296.1, at 296-1.
So far so good. To my knowledge, no case or treatise directly contradicts these points of law, and, as I read the parties’ briefs and the majority opinion, they do not challenge them either. What primarily divides the parties is this: If a Chapter 13 debtor assumes the lease, agrees to pay the creditor directly and later defaults on the lease, does the default create a cognizable administrative-expense claim in favor of the creditor? I think it does.
First, I see no convincing reason for treating creditors dealing with a Chapter 13 debtor differently from creditors dealing with a Chapter 11 debtor-in-possession. The Code offers no basis for treating the two scenarios differently. In both settings, a claim arising from a default on an assumed lease amounts to a post-petition claim. Under § 365(g), which applies to Chapter 11 and Chapter 13 bankruptcies, a default on an assumed lease is treated as a rejection of the lease. See In re Klein Sleep Prods., 78 F.3d at 26 (Chapter 11); In re Wells, 378 B.R. 557, 562 (Bankr.S.D.Ohio 2007) (Chapter 13); 2 Norton, supra, § 46:25. And under that section, the rejection of an tmassumed lease results in a pre-petition claim, while the rejection of an assumed lease results in a posi-petition claim. See 11 U.S.C. § 365(g). Because post-petition claims may qualify for administrative-expense status under § 503, see In re Sunarhauserman, Inc., 126 F.3d 811, 817 (6th Cir.1997), the rejection of assumed leases generally qualifies for such treatment-whether in a Chapter 11 or a Chapter 13 case, see In re Klein Sleep Prods., 78 F.3d at 26 (Chapter 11); In re Multech Corp., 47 B.R. 747, 750 (Bankr.N.D.Iowa 1985) (Chapter 11); see also In re Pearson, 90 B.R. at 638, 640, 645 (Chapter 13); 3 Lundin, supra, § 173.1, at 173-7 to -8.
Parallel treatment also serves the parallel reason for permitting both types of debtors to assume an unexpired lease after they file bankruptcy petitions. When a debtor-in-possession assumes a lease, say, for a building that houses its manufacturing operations during the pendency of a Chapter 11 reorganization and later cannot make payments, the landlord may obtain administrative expenses for “all future rent accruing under [the] assumed lease.” See In re Klein Sleep Prods., 78 F.3d at 28. That is because, without the assumed lease, the business likely could not gener *612 ate the funds necessary to reorganize or to pay other creditors in the interim. No manufacturing operation can long survive without a physical plant, which is why “the total value of the estate has been enhanced by th[e] creditor’s post-petition contribution, ultimately to the benefit of all general unsecured creditors.” In re Cont’l Airlines, Inc., 146 B.R. 520, 526 (Bankr.D.Del.1992). Awarding administrative expenses in this setting thus not only promotes the goal of reorganization by “helping] a debt- or get back on its feet and heading towards convalescence,” In re Klein Sleep Prods., 78 F.3d at 20, but it also ensures “fairness to all persons having claims against an insolvent,” Reading Co. v. Brown, 391 U.S. 471, 477, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).
The same is true with the appropriate assumption of an unexpired car lease during a Chapter 13 bankruptcy. Without the car, the debtors may not be able to travel to a job. And without the job, the debtors may not be able to earn the very income they need to pay their creditors. See In re Williamson, No. 96-41777, 1997 WL 33474939, at *2 (Bankr.S.D.Ga. June 27, 1997) (“If the vehicle is used in a manner that facilitates the debtor’s business, then the amount of any actual benefit derived by the estate should be considered an administrative expense.”).
Second, if Chapter 11 debtors-in-possession and Chapter 13 debtors are equally entitled under the Code to assume unexpired leases after they file bankruptcy petitions and if their respective creditors are each entitled to seek administrative expenses after subsequent defaults, I see no basis for drawing a line between Chapter 13 creditors who receive lease payments directly from the debtor and those who receive them indirectly through a trustee. The Code offers no basis for drawing such a distinction: Section 365(g)(2)(A) treats all assumed leases in the same way, and § 503 applies to all administrative-expense claims. The debtor’s assumption of a lease represents a transaction with the estate for purposes of § 503, no matter whether the trustee or the debtor delivers payment to the creditor. Either way, the payment reduces the amount of money left in the estate to pay other creditors. And the logistics of whether the trustee or the debtor disburses those payments have no impact on the degree of benefit that the act of assumption confers on the estate. Indeed, in some cases, direct payment by the debtor may well save money for other creditors, as the trustee charges a fee on all disbursements. See 28 U.S.C. § 586(e)(2); 3 Lundin, supra, § 157.1, at 157-1 (“[T]o avoid the payment of trustee’s fees, Chapter 13 plans occasionally propose that the debtor will act as a disbursing agent to make payments directly to creditors.”); see generally 1 Lundin, supra, § 64.4.
Third, the case law and commentary by and large support this approach, though it would be an exaggeration to say that the authorities all address this precise point. As I have shown, the cases uniformly hold that creditors of assumed leases are entitled to seek administrative expenses in the Chapter 11 context. As for Chapter 13, all of the cases (until three from the same district decided last year) permit creditors to file administrative-expense claims arising from defaults on assumed leases, though none of them specifically says whether it makes a difference who transfers the payment — the trustee or the debt- or- — and some of them do not even identify who the disbursing agent was. See Transcript of Hearing and Oral Opinion, In re Devericks, No. 05-24122, at 3, 8 (Bankr.E.D.Mich. Jan. 29, 2007) (debtor as disbursing agent); In re Wells, 378 B.R. at 558, 563 (debtor as disbursing agent); In re Enderle, 352 B.R. 444, 447 (Bankr. *613 E.D.Mich.2006) (disbursing agent not identified, though confirmation order shows it was the debtor); In re Masek, 301 B.R. at 336, 341-42 (trustee as disbursing agent); In re Wright, 256 B.R. 858, 861 (Bankr.W.D.N.C.2001) (disbursing agent not identified); In re Hall, 202 B.R. 929, 931, 938 (Bankr.W.D.Tenn.1996) (disbursing agent not identified); In re Pearson, 90 B.R. at 639, 645 (trustee as disbursing agent).
The leading Chapter 13 treatise embraces this view, and its author, the Honorable Keith Lundin, also draws no distinction based on the identity of the disbursing agent. “[I]f the debtor assumes an automobile lease after filing a Chapter 13 case and then has a change of heart and rejects the lease, any postpetition charges or damages for breach of the lease can be an administrative expense under § 365(g)(2)(A).” 4 Lundin, supra, § 296.1, at 296-1; see also 3 Lundin, supra, § 173.1, at 173-7 to -8; id. § 174.2, at 174-6. “The implications are obvious: Chapter 13 debtors must be counseled not to assume contracts or leases carelessly.” Id. § 173.1, at 173-8.
Only one case by my reckoning — the district court decision here — has held that the identity of the disbursing agent makes a difference. In drawing this distinction, however, the court offered no convincing explanation why this fact should affect the analysis. Nor can I think of one.
All of this leaves one last redoubt for rejecting this administrative-expense claim — res judicata — the ground embraced by the majority. As the majority sees the issue, the res judicata effect given to a Chapter 13 plan precludes an administrative-expense claim because it would elevate the lease from a class three claim for an “Executory Contract [ ]” or “Unexpired Lease,” as provided for in this Chapter 13 plan, to a class one “Administrative Expense [ ]” claim. JA 5-6. In one sense, it is right: “The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.” 11 U.S.C. § 1327(a); 3 Lundin, supra, § 229.1; see also 11 U.S.C. § 1329 (listing permissible modifications). But in another sense, it is wrong: Ford is not saying that, before the Parmenters defaulted on the assumed lease, the lease payments were entitled to priority class-one status as administrative expenses arising from the bankruptcy. Consistent with the confirmed plan, they were not. Rather, the point is that, when the Parmenters defaulted on the lease, the status of the lease as a post-petition obligation meant that any default on it generated a potential administrative-expense claim — just as it does when a Chapter 11 debtor-in-possession defaults on a lease or when a Chapter 13 debtor defaults on a lease for which the trustee is the disbursing agent.
Nor can anyone fairly suggest that Ford has engaged in a bait and switch, upsetting the reasonable expectations of either the trustee or other creditors at the time of confirmation. In view of the uniform case law on the point before this plan was confirmed, all of the participants had every reason to believe that a post-petition default on the car lease potentially could generate an administrative-expense claim. Adherence to a majority rule is not the kind of thing that generally disrupts expectations. If there were expectations entitled to res judicata effect, they went in the other direction — that Ford could seek administrative expenses stemming from a default. This was then, and should remain now, a rule on which parties can rely, see In re Klein Sleep Prods., 78 F.3d at 22, and “a backdrop against which” they can *614 negotiate, id. at 30 — -just as it is in the Chapter 11 context.
In re Adkins, 425 F.3d 296 (6th Cir.2005), and In re Nolan, 232 F.3d 528 (6th Cir.2000), do not favor a different conclusion. They hold only that a Chapter 13 party may not reclassify a secured claim as an unsecured claim after confirmation. Adkins, 425 F.3d at 303; Nolan, 232 F.3d at 535. That did not happen here.
While In re White, 370 B.R. 713 (Bankr.E.D.Mich.2007), does support the majority’s position, its reasoning is not convincing. Purporting to apply our decision in Nolan, White reasoned that res judicata precludes administrative expenses for damages under the lease because “in effect that would modify the confirmed plan to reclassify a non-administrative expense claim (Class Three) as an administrative expense claim (Class One).” Id. at 719. But unlike the plan in Nolan, the plan in White, like the plan before us, “did not expressly” say what it could have said' — • “that [the creditor] is not entitled to an administrative claim in the event of default.” In re Wells, 378 B.R. at 562. Ford thus “is not seeking to modify an express determination made under the confirmed plan.” Id. at 562-63.
The White theory, if accepted, also would apply without regard to who the disbursing agent is and without regard to whether the claim arises in a Chapter 13 or a Chapter 11 bankruptcy. Whether trustees, debtors or for that matter debtors-in-possession take responsibility for paying a lease, they each are paying class-three (or lower) claims at the outset and they each are seeking class-one administrative-claim status when a default occurs. The res judicata approach to this problem would apply not just to leases paid by Chapter 13 debtors, then, but also to Chapter 11 leases and Chapter 13 leases paid by trustees. Yet that view runs into an unbroken line of Chapter 11 cases and contradicts the vast majority of Chapter 13 cases — and does so without a persuasive reason why. Better, I think, to stick with the prevailing rule in both bankruptcy settings, and instead remind trustees and creditors that they may object to Chapter 11 and 13 plans that run an undue risk of permitting lessor creditors to obtain better treatment than they deserve relative to the rest of the creditors and to plans that otherwise fail to adopt the most sensible way of nursing the debtor back to fiscal health.
The majority suggests that a lease assumed and paid directly by a Chapter 13 debtor cannot be an “actual, necessary cost [] of preserving the estate,” 11 U.S.C. § 503(b)(1)(A), because the Chapter 13 debtor, unlike the Chapter 11 debtor-in-possession or the Chapter 13 trustee, does not act on the estate’s behalf. But the degree to which a person acts on an estate’s behalf has nothing to do with whether the lease was necessary to “preserv[e]” the estate. Id. The assumed lease serves the same function in either case. And nothing requires the Chapter 13 trustee to remain silent if he believes that assumption is not in the best interests of the estate. See id. § 1302(b)(2)(B); In re Wells, 378 B.R. at 561; 3 Lundin, supra, § 219.1, at 219-4 to -5.
Nor, contrary to the majority’s contention, is there any meaningful difference between payments “outside” and “inside” the plan. As Judge Lundin puts it: “For reasons rooted in history and in the desire of debtors to avoid the payment of trustee’s fees, Chapter 13 plans occasionally propose that the debtor will act as a disbursing agent to make payments directly to creditors. Once upon a time, this practice was called paying claims ‘outside’ the plan. More accurately, all payments to creditors, whether by the Chapter 13 trus *615 tee or directly from the debtor, are payments ‘through’ or ‘pursuant’ or ‘under’ or ‘inside’ the Chapter 13 plan.” 2 Lundin, swpra, § 157.1, at 157-1 (emphasis added) (internal footnotes omitted). All payments, in short, are under the plan. The majority seeing these issues differently, I respectfully dissent.