**In re Tracey WHITE, and Kawagi White, Debtors.**

**No. 03–59747.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

July 3, 2007.

As Amended July 5, 2007.

Thomas A. Beck, Livonia, MI, for Debtor.

1. Citations to the Bankruptcy Code in this Opinion are to the Code before it was amended by the "Bankruptcy Abuse Prevention and Consumer Protection Act of 2005" ("BAPC-

## SUPPLEMENTAL OPINION DENYING FORD MOTOR CREDIT COMPANY'S MOTION FOR ALLOWANCE OF AN ADMINISTRATIVE EXPENSE CLAIM

THOMAS J. TUCKER, Bankruptcy Judge.

This case came before the Court on the "Motion For Allowance of an Administrative Expense Claim on Behalf of Ford Motor Credit Company" (Docket # 69). In its motion, Ford seeks payment, as an administrative expense in this Chapter 13 case, of $3,004.81. This sum allegedly is due under the terms of a vehicle lease that Debtors assumed in their confirmed Chapter 13 Plan.

On April 5, 2007, the Court delivered a bench opinion denying Ford's motion. This written opinion supplements the bench opinion.

Ford's motion must be denied because under Debtors' confirmed Chapter 13 Plan, Ford's claim under the assumed vehicle lease is not classified as an administrative expense claim, but rather is classified and treated *other than* as an administrative claim. Ford is bound by the terms of the confirmed plan, under 11 U.S.C. § 1327(a).[1] And even if the Court could construe Ford's motion as a motion to modify the confirmed plan, Sixth Circuit precedent would preclude such a modification.

## I.  Facts

### A.  The Ford lease and the confirmed Chapter 13 plan

The relevant facts are not in dispute. Pre-petition, on June 30, 2003, Debtor Tra-

PA"), because this case was filed before October 17, 2005, the generally-effective date of BAPCPA.

cey White made an agreement with Ford Motor Credit Company to lease a 2003 Ford Windstar. The Lease required Debtor to make monthly payments of $568.77 for the remaining term of the Lease. The Lease also obligated Debtor to pay for excess wear, and for any excess mileage put on the leased vehicle.

On July 16, 2003, Debtors filed their voluntary petition for relief under Chapter 13. On October 23, 2003, Debtors filed a proposed amended Chapter 13 Plan,[2] which the Court confirmed on January 8, 2004.[3]

The Plan required Debtors to make payments of $557.72 per week to the Chapter 13 Trustee for 37 months, and to pay the Trustee 100% of all tax refunds Debtors receive after the commencement of the case. The Plan classified claims into eight classes, as is permitted by 11 U.S.C. § 1322(b)(1).

Class One of the Plan is administrative expense claims. The only two claims classified under Class One are the claims for "Trustee fees as determined by statute"; and the fees and costs of Debtors' attorney.[4]

Class Three of the Plan is "Executory Contracts and/or Unexpired Leases [11 U.S.C. § 1322(b)(7) and 11 U.S.C. § 365]."[5] Ford's claim under the Lease is classified under Subpart (a) of Class Three, which provides for the treatment of continuing post-petition obligations. Under Class 3(a), Debtors assumed the Lease, and were required to make monthly payments to Ford of $568.77 until the

Lease's September 30, 2006 expiration date. The Plan stated that Debtors were current on payments under the Lease, and would make the monthly payments directly to Ford.[6]

Class Eight of the Plan is general unsecured claims, and the Plan states that these claims "shall be paid 31% of such amounts with interest at the rate of 0% per annum" or that payments "shall continue for the [Plan] length stated, whichever will offer the greater dividend to general unsecured creditors in this class."[7]

Regarding the order of the payment of claims, the Plan provides: "Class One claims shall be paid in advance of others, then Classes Two and Three in advance of all remaining classes, then Classes Four and Five, then Class Six, and then Classes Seven and Eight shall be paid as stated in each respective section [LBR 3015–1(a)(5) (E.D.M.) ]."[8]

The Plan provides that "[u]pon confirmation of the Plan, all property of the estate shall vest in the debtor [11 U.S.C. § 1327(b) ]."[9]

## B. Post-confirmation events

On March 2, 2005, the Court entered an Order which modified the Plan in several ways, but there were no changes to the treatment of Ford's claim under the Plan.[10]

Debtors made all but one of the required monthly payments to Ford under the assumed Lease. At the end of the Lease term, on September 29, 2006, Debtors returned the vehicle to Ford. Ford

2. (Docket # 37.)

3. (Docket # 50.)

4. (Plan at 1 ¶ 1.D.1.)

5. (*Id.* at 2 ¶ 1.D.3.)

6. (*Id.* at 2 ¶ 1.D.3.a.)

7. (*Id.* at 3 ¶ 1.D.9.)

8. (*Id.* at 4 ¶ II.I.)

9. (*Id.* at 3 ¶ II.B.)

10. (Docket # 62.)

then made a Vehicle Condition Report, indicating that Debtors owe $2,298.15 for excess mileage; $137.88 for sales tax; and $568.77 for a monthly Lease payment, for a total of $3,004.80.[11]  On February 13, 2007, Ford filed its motion, seeking an order allowing $3,004.81 as an administrative expense claim under 11 U.S.C. § 503(b)(1)(A).[12]  Ford apparently seeks an order that would require the Chapter 13 Trustee to pay Ford the $3,004.81 still due under the assumed Lease, from funds the Trustee would otherwise disburse to other creditors under the Plan.

The Chapter 13 Trustee filed an objection to Ford's motion, arguing that Ford is not entitled to an administrative expense claim under § 503(b)(1)(A) because upon confirmation, Debtors' rights under the Lease ceased to be property of the estate, and thus the assumed Lease conferred no benefit on the estate.  The Trustee also noted that granting Ford's motion would "substantially adversely impact all creditors in this case."  Debtors did not file an objection to Ford's motion.

The Court held a hearing at which Ford, the Chapter 13 Trustee, and Debtors all appeared and argued through counsel. Debtors stated at the hearing that they agreed with the Trustee's position and also objected to the motion.  The Court overruled Debtors' oral objection, however, as untimely.  That left for decision the Trustee's objection to the motion.

**11.** Ford's motion states that the Lease expired on August 30, 2006 and that the $568.77 payment owed was for "unpaid post-termination lease payments."  Because the Plan states that the Lease expiration date is September 30, 2006, it appears that this is a regular monthly payment due under the Lease.

**12.** ("Motion For Allowance of an Administrative Expense Claim on Behalf of Ford Motor Credit Company" (Docket # 69) at 2.)

## II. Jurisdiction

This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1), and Local Rule 83.50(a) (E.D.Mich.).  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), and (O).

## III. Discussion

### A. The parties' positions, and the conflicting case law within this district

In support of her position, the Trustee cites *Ford Motor Credit Co. v. Bankruptcy Estate of Benn*, 362 B.R. 1 (E.D.Mich. 2007), which affirmed rulings made by Bankruptcy Judge McIvor.  In *Benn*, the United States District Court held that when a debtor defaults after assuming a vehicle lease in a confirmed Chapter 13 plan, the vehicle lessor is not entitled to an administrative expense claim.  The court reasoned that the assumed vehicle lease is not a benefit to the debtor's estate, when the debtor's confirmed Chapter 13 plan provides (1) that upon confirmation, the estate property vests in the debtor; and (2) that no payments under the assumed lease are to be made from property of the estate.  The court held that because there is no benefit to the estate, the debtor's obligations under the assumed lease cannot qualify as an administrative expense under 11 U.S.C. § 503(b)(1)(A).  *Id.* at 3–4, 6.[13]

**13.** Section 503(b)(1)(A) states, in pertinent part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate[.]

Ford cites several cases in support of its position, including decisions by two other bankruptcy judges from this district: *In re Enderle*, 352 B.R. 444 (Bankr.E.D.Mich. 2006)(Chief Judge Rhodes); and *In re Devericks*, Case No. 05–24122 (January 29, 2007 bench opinion by Judge Opperman).[14]

In *Enderle*, the debtors assumed a vehicle lease in their confirmed Chapter 13 plan but later defaulted on the lease. Based on the default, the vehicle lessor obtained an order lifting the automatic stay, and sold the vehicle at an auction. After the sale, there was a deficiency balance under the lease. The lessor argued that it was entitled to an administrative expense claim under § 503(b)(1)(A) in the amount of the deficiency, including attorney fees. *Id.* at 445. Relying on *In re Masek*, 301 B.R. 336 (Bankr.D.Neb.2003), and *In re Hall*, 202 B.R. 929 (Bankr. W.D.Tenn.1996), the court held that the lessor was entitled to an administrative expense claim for the deficiency balance under the lease, excluding the attorney fees. The *Enderle* court reasoned: " 'Allowance of administrative expenses under § 503(b)(1)(A), combined with the power to assume an executory contract or unexpired lease in a Chapter 13 plan under § 1322(b)(7), renders claims resulting from assumption of a lease actual and necessary costs of preserving the bankruptcy estate.' " *Id.* at 446 (quoting *Masek*, 301 B.R. at 337).

In his bench opinion in *Devericks*, Bankruptcy Judge Opperman noted the cases cited by the parties including, among others, the *Benn* and *Enderle* cases, and reached the same result as *Enderle*.

## B. The Court's ruling

The Court has reviewed the authorities cited by the parties, and concludes that Ford's motion for allowance of an administrative expense claim must be denied because it is inconsistent with Debtors' confirmed Plan. As a result, in this case, at least, it is not necessary to decide whether the Debtors' assumption of the Lease benefitted the estate.

## 1. Debtors' assumption of the Lease

■ Section 1322(b)(7) permits a debtor to assume, reject, or assign an unexpired lease in a Chapter 13 plan. It provides: "Subject to subsections (a) and (c) of this section, the plan may ... *subject to section 365* of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section." 11 U.S.C. § 1322(b)(7) (italics added). The "subject to section 365" language of § 1322(b)(7) makes § 365, which applies to trustees, also applicable to Chapter 13 debtors. Section 365, in turn, provides that, with exceptions not relevant here, "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). Debtors assumed the Lease in their Plan and provided for the treatment of Ford's claims under the assumed Lease, under Class Three of the Plan. The Court approved Debtors' assumption of the Lease by entering the order confirming the Plan.

By assuming the Lease in their Plan under §§ 1322(b)(7) and 365(a), Debtors became obligated under the Plan to perform all of their contractual obligations under the Lease. *See City of Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1226 (6th Cir.1995) (Chapter 11 case) ("When the debtor assumes the lease or the contract under § 365, it must assume both the benefits and the burdens of the

**14.** (Docket # 47.)

contract. Neither the debtor nor the bankruptcy court may excise material obligations owing to the non-debtor contracting party.") Therefore, in assuming the Lease, Debtors became obligated to pay not only the monthly payments of $568.77 through the remaining term of the Lease, but also any other sums that became due at any time in the future under the terms of the Lease, including any sums contractually due for excess mileage and wear.

### 2. The binding effect of Debtors' confirmed Plan

■ Under 11 U.S.C. § 1327(a), Debtors, Ford, and all the other creditors are bound by the Plan's treatment of Ford's claim under the assumed Lease. 11 U.S.C. § 1327(a). Under § 1327(a), confirmation of a Chapter 13 plan is, in effect, an adjudication of litigation over the issues of the classification and treatment of claims provided for in a proposed Chapter 13 plan, and is *res judicata* on those issues. *See, e.g., In re Rubinski,* 349 B.R. 320, 323 (Bankr.D.Mass.2006); *In re Hedrick,* 343 B.R. 762, 765 (Bankr.E.D.Va.2006).

■ Class Three of the Plan did not designate and treat Ford's claim under the assumed Lease as an administrative expense claim. Rather, Class One designated and treated the administrative expense claims, and it did not include Ford's claim. Therefore, under the confirmed Plan any claim Ford may have for sums due under the assumed Lease is to be treated as is provided in Class Three. That treatment is that such sums are to be paid directly by Debtors, not by the Chapter 13 Trustee.

### 3. Even construing Ford's motion as a motion to modify the confirmed plan, the motion must be denied.

■ It may be possible to construe Ford's motion for allowance of an administrative expense claim as a motion under 11 U.S.C. § 1329(a) [15] to modify Debtors' confirmed Plan, to reclassify Ford's claim under the assumed Lease from a Class Three claim to a Class One administrative expense claim. But Sixth Circuit case law interpreting § 1329(a) would require the Court to deny such a request for modification.

In *Chrysler Fin. Corp. v. Nolan (In re Nolan),* 232 F.3d 528 (6th Cir.2000), the Chapter 13 debtor moved to modify her confirmed plan, to reclassify a claim that was treated as an allowed secured claim in her confirmed plan to an unsecured claim. In *Nolan,* the debtor's confirmed plan gave Chrysler Financial Corporation an allowed secured claim in the amount of $8,200.00 (the value of the vehicle in which Chrysler had a lien,) and an unsecured claim in the amount of $4,091.45. 232 F.3d at 529. The confirmed plan provided that the debtor was to maintain possession of the vehicle, and was required to pay Chrysler $207.97 per month for its secured claim, and "cents-on-the-dollar" for its unsecured claim. *Id.* Later, in the debtor's motion to modify her plan, "she sought permission to surrender her vehicle to

---

**15.** The pre-BAPCPA version of § 1329(a) states:

    (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
    (2) extend or reduce the time for such payments;
    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

Chrysler, [and] reclassify the deficiency owed on the vehicle as an unsecured claim[.]" *Id.*

The Sixth Circuit concluded that "Section 1329(a)(1) should not be read so broadly as to authorize the reclassification of claims." *Id.* at 533 (citation omitted). The court reasoned:

[S]ection 1329(a) does not expressly allow the debtor to alter, reduce or reclassify a previously allowed secured claim. 11 U.S.C. § 1329(a).... Instead, section 1329(a)(1) only affords the debtor a right to request alteration of the amount or timing of specific payments. A debtor cannot use section 1329(b)(1) to enlarge the modifications permitted by section 1329(a), since section 1329(b)(1) does not apply unless the proposed modification first complies with section 1329(a)(1). A modification that reduces the claim of a secured [creditor] would add a claim to the class of unsecured creditors, a change prohibited by section 1329(a).

*Id.* at 532–33 (citations and footnote omitted). Based, in part, on this reasoning, the Sixth Circuit held that after confirmation of a Chapter 13 plan, a debtor "cannot modify a plan under section 1329(a) by: 1) surrendering the collateral to a [secured] creditor; 2) having the creditor sell the collateral and apply the proceeds toward the claim; and 3) having any deficiency classified as an unsecured claim," where the creditor's claim was originally treated as a secured claim. *Id.* at 535.[16]

The reasoning in *Nolan* applies here— Section 1329(a) does not allow reclassification of Ford's claim. If Ford were allowed an administrative expense claim for sums due under the Lease that was assumed in Class Three of the Plan, in effect that would modify the confirmed plan to reclassify a non-administrative expense claim (Class Three) as an administrative expense claim (Class One). *Nolan* precludes such a reclassification. Ford is bound by the classification of its claim in the Plan as a Class Three claim, and if it is entitled to recover anything further under the assumed Lease, such recovery must be consistent with the treatment provided for in Class Three. In this case, that means any further payments due to Ford must be paid by Debtors directly, not by the Chapter 13 Trustee.

**4. Code Section 365(g)(2) and the concept of post-assumption rejection**

The parties have cited and discussed 11 U.S.C. § 365(g)(2). That section contemplates the possibility that a lease assumed in a confirmed Chapter 13 plan could later be rejected. Section 365(g)(2) suggests that Ford's claim would be considered a post-petition claim if the Lease were later rejected.[17] There is authority that in that

---

**16.** The Sixth Circuit followed and applied *Nolan* in *Ruskin v. DaimlerChrysler Services North America, L.L.C. (In re Adkins)*, 425 F.3d 296, 303, 305 (6th Cir.2005). There the court held that *"Nolan's* ban against post-confirmation reclassifications equally applies to cases in which the [d]ebtor's actions (i.e., default) have provided cause for [a] secured creditor to have the automatic stay lifted so the creditor may repossess the collateral." *Adkins* noted that "there exists no provision of the Code applicable to this case that would allow a reclassification of the deficiency [resulting from the post-confirmation repossession and

sale of a vehicle by the secured creditor due to the debtor's default] given the 'binding effect' of the confirmed plan under 11 U.S.C. § 1327."

**17.** That section provides that:

(g) Except as provided in subsections (h)(2) and (i)(2) of this section, **the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—**

...

(2) **if such contract or lease has been assumed under this section or under a plan**

situation, Ford's claim could be allowed as an administrative expense. *See* 3 Keith M. Lundin, *Chapter 13 Bankruptcy,* § 174.2 at 174–6 (3d. ed. 2000 & Supp.2004) and authorities cited therein.

In light of the Sixth Circuit's decision in *Nolan,* § 365(g)(2) could raise some interesting issues if the Debtors, having assumed the Ford Lease in their confirmed Plan, later sought to reject the Lease. The Court does not need to reach such issues at this point, however, because Ford does not argue that the Lease has been rejected. Ford contends only that Debtors have *breached* the Lease, by failing to pay remaining sums due under the Lease. But a mere *breach* is not a *rejection* under § 365. Under § 365(a), rejection of an unexpired lease requires a motion (unless rejection occurs via a confirmed plan) and court approval, unless rejection is "deemed" to occur under particular provisions of § 365.[18] *See generally Thinking Machines Corp. v. Mellon Financial Services Corp. # 1 (In re Thinking Machines Corp.),* 67 F.3d 1021, 1025–28 (1st Cir. 1995). These exceptions, to the general rule requiring a motion and order to accomplish rejection, do not apply here. And Debtors have never filed a motion or obtained an order to reject the Lease. Therefore § 365(g)(2) does not apply.

## IV. Conclusion

Given the grounds of decision in this case, it is not necessary for the Court to take sides in the debate about whether and when a Chapter 13 debtor's assumption of a lease benefits the bankruptcy estate, one of the general requirements for allowance of an administrative claim. This debate, illustrated by such cases as *Benn* on the one hand and *Enderle* on the other hand, is not material to this case. The terms of the confirmed plan, combined with the Sixth Circuit's reasoning in *Nolan,* preclude treatment of Ford's claim as an administrative expense, even if the Debtors' assumption of the Ford Lease *has* benefitted the estate.

For the reasons discussed in this opinion, and in the Court's bench opinion, the Court must deny Ford's motion for allowance of an administrative expense claim. The Court has entered an appropriate order.

confirmed under chapter 9, 11, 12, or 13 of this title—
    (A) if before such rejection the case has not been converted under section 1112, 1208, or 1307 of this title, **at the time of such rejection;** or
    (B) if before such rejection the case has been converted under section 1112, 1208, or 1307 of this title—

    (i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or
    (ii) at the time of such rejection, if such contract or lease was assumed after such conversion.
11 U.S.C. § 365(g)(2)(bold emphasis added).

**18.** *See* 11 U.S.C. §§ 365(d)(1) and (d)(4).