The court delivered a PER CURIAM opinion. SUTTON, J. (pp. 610-15), delivered a separate dissenting opinion.
OPINION
PER CURIAM.
In this bankruptcy case, Ford Motor Credit Company challenges the denial of its motion for administrative expenses arising from Clayton and Lydia Parmen-ter’s default on a lease that they assumed direct responsibility for paying as part of their Chapter 13 plan. Because the terms of this confirmed Chapter 13 plan bind Ford, we affirm.
I.
In 2003, the Parmenters leased a Ford Explorer, which required them to make 36 payments of $388.14 over the course of three years. Before the lease ended, the Parmenters filed a Chapter 13 bankruptcy petition. Under their proposed bankruptcy plan, the Parmenters agreed to assume the Ford lease and to pay the remaining lease payments directly to Ford, while the Trustee took responsibility for paying all other claims to the Parmenters’ creditors. No one filed an objection to the plan, and the bankruptcy court confirmed it. The confirmation order required the Parmen-ters to pay $467 into the plan each week until the Ford lease expired. After that, *608 payments would increase to $567 per week for the remainder of the three-year bankruptcy plan.
Shortly after confirmation of the plan, the Parmenters defaulted on the car lease. The bankruptcy court granted Ford’s motion for relief from the automatic stay, and Ford repossessed the Explorer and sold it at an auction. Afterwards, Ford filed a motion for administrative expenses of $5,919.28, which included the deficiency balance on the lease and attorney fees. The bankruptcy court denied Ford’s motion because “the assumption did not confer a benefit upon the Estate,” JA 37, and because “the confirmed plan is res judicata as to the rights of the parties,” JA 93. The district court affirmed.
II.
In assessing whether the bankruptcy court correctly denied Ford’s motion for an administrative-expense claim, we start with the terms of the Chapter 13 bankruptcy plan. In a Chapter 13 case, “[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.” 11 U.S.C. § 1327(a).
Section I.D of the plan governs the “[treatment of claims” and lists the priority with which they will be paid. The first class of claims, “Class One — Administrative Expenses,” includes trustee and attorney fees, JA 5, which “shall be paid in advance of other [ ]” claims, JA 8. Conspicuously absent from these expenses is any mention of the Ford lease. Instead, the Ford lease falls under “Class Three — Ex-ecutory Contracts and/or Unexpired Leases,” with a notation that the lease would be “[a]ssume[d]” and that monthly lease payments of $389 would be “[p]aid [djirect by Debtor.” JA 6. Other claims include: “Class Two — -Continuing Claims” for a mortgage; “Class Four-Arrearage on Continuing Claims”; and “Class Five— Other Secured Claims” for payments to the city water department and the county treasurer. JA 6. Once these claims have been paid, the plan permits the payment of “Class Eight — General Unsecured Claims,” which primarily include debts to credit card companies, all paid at 10% of their face value. JA 7.
The plan required the Trustee to pay all of these claims, except the Ford lease payments. See 11 U.S.C. § 1326(c) (“Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.”). The Parmenters chose to treat the lease differently: They opted to assume the lease and make direct payments to Ford, as also permitted by the Code. See id. (“Except as otherwise provided in the plan .... ”); see also id. § 1322(b)(7) (providing for assumption of a lease under a Chapter 13 plan). Under the plan, then, neither the Trustee nor the estate took on an obligation of paying Ford for the lease. And the plan deducted the value of the lease payments from the amount that the Parmenters otherwise would have paid into the plan. By confirming the plan, the bankruptcy court made these terms “bind[ing][on] the debtor and each creditor.” Id. § 1327(a).
As we see it, Ford’s administrative-expense claim seeks relief that the plan does not permit — transforming a class three claim into a class one claim and, in the process, leapfrogging other creditors. Ford, like all creditors and the debtor, is bound by the terms of a confirmed plan and accordingly may not unwind those terms in order to elevate its losses into administrative expenses. See id. (“The provisions of a confirmed plan bind ... *609 each creditor, whether or not the claim of such creditor is provided for by the plan ....”) (emphasis added). The plan says nothing about permitting the estate to make lease payments to Ford. Yet Ford’s motion, if granted, would allow the company to impose an obligation on the estate where none existed and indeed would give that claim the highest priority permitted. Well before the Parmenters defaulted, Ford had made its own bed outside the plan and now must lie in it: If the car company wishes to obtain any additional relief against the Parmenters, it must do so outside the plan.
A bankruptcy court, it is no doubt true, may modify a plan in some circumstances, but this is not one of them. See id. § 1329(a) (permitting a court to modify the plan to “(1) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (2) extend or reduce the time for such payments; (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan ...; or (4) reduce amounts to be paid under the plan by the actual amount expended by the debtor to purchase health insurance”) (emphases added). As § 1329(a) indicates, the changes permitted by the Code concern modifications to the amount and timing of payments, not to the creation of a new obligation on the estate, least of all one that trumps other claims.
In addition to the decision below, two cases from the same district have reached a similar conclusion. See generally In re White, 370 B.R. 713 (Bankr.E.D.Mich.2007); Transcript of Hearing and Oral Opinion, In re Hackman, No. 05-78798 (Bankr.E.D.Mich. Apr. 24, 2007). In White, the debtors assumed a car lease with Ford under a Chapter 13 plan, which listed the lease as a class three claim and noted that the debtor “would make the monthly payments directly to Ford.” 370 B.R. at 715. After confirmation, the debtors defaulted on the lease and turned the vehicle over to Ford. Id. at 715-16. Ford filed a motion for administrative expenses for excess mileage, sales tax and a monthly lease payment, id. at 716, which the court denied, id. at 717. The court reasoned that, when the debtors opted to assume the lease, they became obligated to make the monthly payments and to pay “any other sums that became due at any time in the future under the terms of the [l]ease.” Id. at 718. “Under § 1327(a),” the court explained, “confirmation of a Chapter 13 plan is, in effect, an adjudication of litigation over the issues of the classification and treatment of claims provided for in a proposed Chapter 13 plan, and is res judi-cata on those issues.” Id. Reasoning that the plan designated the lease as a class three claim rather than a class one claim, the court held that any claim for “sums due under the assumed lease” should follow the treatment of the claim provided in class three — “that such sums are to be paid directly by Debtors, not by the Chapter 13 Trustee.” Id. Reclassification of the claim, it added, was not a permissible modification under § 1329(a). Id. at 718-19 (citing In re Nolan, 232 F.3d 528, 533 (6th Cir.2000)).
Our conclusion also respects the goals “of obtaining a maximum and equitable distribution for creditors and ensuring a ‘fresh start’ for individual debtors, which the [Supreme] Court has often said are at the core of federal bankruptcy law.” BFP v. Resolution Trust Corp., 511 U.S. 531, 563, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). If we permitted Ford’s claim, we would assuredly upset the reasonable expectations of other creditors' — first by allowing Ford’s claim to trump other claims and second by potentially depleting many of the estate’s assets designated for other *610 creditors. Because the Parmenters assumed the lease and took responsibility for making lease payments, the other creditors had no reason to expect that Ford would step ahead of them in line if a default occurred. The Parmenters’ plan payments were reduced by the amount of their monthly lease payments, and their payments were not scheduled to increase until after the lease expired. Awarding administrative expenses now, without the benefit of the extra $389 per month, would leave the estate with the same amount of money yet greater claims to pay — hardly a recipe for a successful Chapter 13 plan. If Ford wanted the security of receiving payments directly from the Trustee, it should have objected to the proposed plan.
In advancing a different approach to this case, Ford relies on Chapter 11 cases that have allowed administrative expenses when a debtor-in-possession assumes a lease and later defaults. See, e.g., In re Klein Sleep Prods., Inc., 78 F.3d 18, 28 (2d Cir.1996); In re Multech Corp., 47 B.R. 747, 750-51 (Bankr.N.D.Iowa 1985). Several courts, it adds, have embraced this reasoning in addressing assumed leases in Chapter 13 plans. See, e.g., In re Wells, 378 B.R. 557, 561-63 (Bankr.S.D.Ohio 2007); In re Masek, 301 B.R. 336, 337-42 (Bankr.D.Neb.2003); In re Hall, 202 B.R. 929, 934-36 (Bankr.W.D.Tenn.1996); In re Pearson, 90 B.R. 638, 642-44 (Bankr.D.N.J.1988). But there is a material difference between the two settings: Whereas a Chapter 11 debtor-in-possession acts on behalf of the estate when it assumes a lease and thus creates a legal obligation on the estate, see In re Multech Corp., 47 B.R. at 750-51, a Chapter 13 debtor who assumes and pays for a lease outside of the plan does not.
That is why In re Wells, perhaps the most analogous case and the most extensively reasoned one to make this point, does not persuade us. Wells reasoned that “[i]t is well-established that the act of assumption obligates the bankruptcy estate,” citing authorities involving Chapter 11 bankruptcies. 378 B.R. at 561. The court went on to explain that in a Chapter 13 case, “[e]ven if a plan requires a debtor to make direct payments to a lessor outside the plan, the assumption of the lease obligates the estate as guarantor.” Id. But this critical link in the court’s chain of reasoning does not necessarily follow, and indeed the court cited no authority to support it. Because the debtor elected to assume the lease and pay it directly, Ford cannot now say that the estate was a latent guarantor of the lease. The parties entered into a contract, and the bankruptcy court ratified it. Therefore, res judicata applies.
III.
For these reasons, we affirm.