**In the Matter of Stephen Wesley BEAM, Melissa Copeland Beam, Debtors.**

**Stephen Wesley Beam, Melissa Copeland Beam, Movants.**

**v.**

**Chase Home Finance, LLC, Respondent.**

**No. 10–12184–WHD.**

United States Bankruptcy Court, N.D. Georgia, Newnan Division.

Signed March 27, 2014.

Craig Z. Black, Robert J. Semrad & Associates, LLC, Atlanta, GA, John T. Dufour, Van Pelt & Dufour, Carrollton, GA, for Debtors.

Adam M. Goodman, Atlanta, GA, Trustee.

### ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Before the Court is the Debtors' Motion to Strip the Second Mortgage held by Chase Home Finance, LLC as unsecured (hereinafter the "Motion to Strip"), pursuant to 11 U.S.C. §§ 506(a) & (d), 11 U.S.C. § 1322(b)(2), and FED. R. BANKR.P. 3012 and 9014. The Debtors also filed a Motion to Compel the Chapter 13 Trustee (hereinafter the "Motion to Compel") to sign an Order granting the Motion to Strip. Additionally, the Debtors filed a correlating Post Confirmation Modification of their Chapter 13 Plan (hereinafter the "Plan Modification") to reflect the second mort-

gage held by Chase Home Finance, LLC (hereinafter "Chase") as unsecured.

The Motion to Strip and the Plan Modification came before the Court for hearing on December 19, 2013. The Chapter 13 Trustee (hereinafter the "Trustee") objected to both. The Debtors contend that a Chapter 13 debtor is allowed to utilize the "lien-strip" process enunciated by the Eleventh Circuit in *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357, 1360 (11th Cir.2000) to change the secured status of a secured creditor after confirmation of the plan. The Chapter 13 Trustee rejects the Debtors' argument and believes that the *res judicata* effect of a confirmed Chapter 13 Plan prevents the Debtors, now, from stripping the lien. The Court now addresses the issues presented in the Motion to Strip and the Plan Modification. This is a core proceeding under 28 U.S.C. § 157(b)(2) and jurisdiction and venue are proper. *See* 28 U.S.C. §§ 157(a); & (b)(1); & 1334(b), and 1408–1409.

### Findings of Fact

Stephen Wesley Beam and Melissa Copeland Beam (hereinafter the Debtors) filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code [1] on June 7, 2010. By Order, the Court confirmed the Debtors' Chapter 13 Plan on August 26, 2010. According to the schedules, the Debtors own real property located at 315 Hidden Lakes Drive valued at $376,000.00. The Debtors indicated in their schedules that the property is subject to a first priority security deed held by Suntrust Mortgage Inc. (hereinafter "Suntrust") in the amount of $384,217.87. The property is also subject to a second priority security deed held by Chase in the amount of $91,316.22.

Suntrust Mortgage Inc. filed its first priority secured claim on June 15, 2010 in

the amount of $386,434.07. *See* Proof of Claim 3–1. Chase filed its second priority secured claim on July 15, 2010 in the amount of $92,031.61. *See* Proof of Claim 8–1. The plan, as initially confirmed, provided a 100% dividend to unsecured creditors. The plan, as modified since confirmation, currently provides for payments of $2,130.00 per month and a dividend of forty-five percent to be paid to unsecured creditors. The Debtors' Chapter 13 plan at confirmation also acknowledged both Suntrust and Chase as secured creditors, provided that the Debtors were current on their monthly payments to Chase, and obliged themselves to continue making contractual payments to Chase as such payments come due under its note.

On May 16, 2013, nearly three years after confirmation, the Debtors filed this Motion to Strip and scheduled a hearing for June 20, 2013. The Debtors properly served Chase with the Motion to Strip by both regular and certified mail. Nevertheless, Chase failed to appear in opposition. No party voiced opposition to the Motion to Strip, and the clerk directed the Debtors to submit their order for the Court's Approval. However, the Court procedurally requires the Chapter 13 Trustee's signature indicating no opposition before it accepts such an order, and the Trustee and the Debtor failed to reach an accord. Though the Trustee did not voice opposition at the hearing, he believes the Debtors' Motion to Strip to be improper and, thus, refuses to endorse the order. Believing the Trustee's initial silence to be determinative of his position and the clerk's directive to be final, the Debtors subsequently filed a Motion to Compel the Chapter 13 Trustee to withdraw his opposition to the Debtors' Motion to Strip. The Motion to Strip and the Motion to

1. 11 U.S.C. § 101 *et seq.*

Compel came before the Court on December 19, 2013.

Additionally, the Debtors filed the Plan Modification (Doc. No. 89), which reasserts that Chase's second priority lien is completely unsecured, as the unpaid balance owed to the first position lien holder exceeds the value of the Debtors' residence. The Plan Modification indicates that the Debtors will seek an order "stripping" Chase's second lien and directs the Trustee to treat any claim filed by Chase as unsecured. The Plan Modification was also set for hearing on December 19, 2013.

At the hearing, the Court directed both parties to submit briefs on the issue as to whether the Code permits a Chapter 13 debtor to change the secured status of a secondary lien in accordance with *In re Tanner* after the confirmation of a Chapter 13 Plan. The Court took the matter under advisement.

### Conclusions of Law

Through the Motion to Strip and the Plan Modification, the Debtors are attempting to void the second priority lien held by Chase, designate Chase's claim as unsecured, and have it discharged after the successful conclusion of this bankruptcy case. The Debtors cite 11 U.S.C. § 506(a) & (d) as the legal authority for determining that the value of the property is less than the claim held by Suntrust, thereby rendering Chase's claim, as second in priority, unsecured.

In a Chapter 13 case, section 1322(b)(2) provides special treatment for creditors with a mortgage on the debtor's home. Specifically, section 1322(b)(2) permits a debtor's Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). The Supreme Court held in *Nobleman v. Am. Savings Bank* that section 1322(b)(2) protects from modification only an unsecured portion of a partially secured claim (on a debtor's primary residence) determined under section 506[2] of the Bankruptcy Code. *In re Berrouet,* 469 B.R. 393, 396 (Bankr.N.D.Ga.2012) (Diehl, B.J.) (citing *Nobleman v. Am. Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 2111, 124 L.Ed.2d 228 (1993)). However, Eleventh Circuit precedent does not limit a debtor's ability under section 1322(b)(2) to use section 506 to value collateral, determine the secured portion of a secured residential mortgage, and modify said mortgage, when the junior lien is wholly unsecured. *Id.* (citing *Tanner v. FirstPlus Fin., Inc. (In re Tanner),* 217 F.3d 1357, 1360 (11th Cir.2000)).

The Debtors are correct in their analysis of sections 506 and 1322, that a lien strip is proper based upon the facts as set forth by the Debtors. Specifically, the fair market value of the Debtors' residence was $376,000.00 on the petition date, Suntrust's first priority security deed was $384.217.87, and the second priority security deed held by Chase was $91,316.22. Based on those values, Chase's claim is wholly unsecured and subject to being stripped in accordance with *In re Tanner*. *See generally In re Tanner,* 217 F.3d 1357 (11th Cir.2000). However, the fundamen-

---

**2.** Section 506(a) defines the secured and unsecured components of debts according to the value of the underlying collateral:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, ... and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such claim.

11 U.S.C. § 506(a).

tals of *Tanner* are not the questions before the Court.

The central issue before the Court is whether the Debtors may strip the lien of Chase through the Motion to Strip and the Plan Modification *after* the confirmation of the Chapter 13 plan. The Debtors argue that a secondary lien may be stripped using the "lien-strip" method approved in *In re Tanner* after confirmation of a Chapter 13 plan in accordance with section 502(j) of the Bankruptcy Code and Rule 3008 of the Federal Rules of Bankruptcy Procedure. Specifically, the Debtors argue that section 1329, which governs modification of a Chapter 13 plan, should be applied in the same manner as section 502(j) and Rule 3008. The Court will address the argument presented by the Debtors.

## I. *Res Judicata effect of the Chapter 13 Plan Confirmation*

 As an initial matter, the Court recognizes the *res judicata* effect that the confirmation of the Chapter 13 Plan bestows in the instant case. Section 1327 provides that "[t]he provisions of a confirmed plan bind the *debtor* and each creditor, whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327 (emphasis added). The finality of the confirmation order extends to both the debtor and the creditor as, upon entry of said order and absent a timely appeal or proceeding to revoke confirmation, both sides are protected from having to relitigate issues that were or could have been decided prior to confirmation. *In re Bernard,* 189 B.R. 1017, 1019 (Bankr.N.D.Ga.1996) (Drake, B.J.). "Confirmation of a Chapter 13 plan is essentially an adjudication of litigation over the issues of the classification and treatment of claims provided for in a proposed chapter 13 plan, and is *res judicata* on those issues." *In re Berrouet,* 469 B.R. 393, 396

(Bankr.N.D.Ga.2012) (Diehl, B.J.) (citing *Ford Motor Credit Co. v. Parmenter (In re Parmenter),* 527 F.3d 606, 609 (6th Cir. 2008); *In re Stevens,* 130 F.3d 1027, 1029 (11th Cir.1997)). Accordingly, the confirmation of the Debtors' Chapter 13 plan binds the Debtors and Chase to its terms.

The Debtors provided for Chase as a secured creditor in their plan and in a subsequent plan modification. Now, the Debtors contend that, as of the filing of the petition, the fair market value of the house was less than the balance owed on the first priority lien, acknowledge that Chase's lien was wholly unsecured at the time the case was filed, and reflect that the lien could have and should have been stripped prior to confirmation. The Debtors thus seek to correct their oversight and "strip" the lien of Chase 32 months after confirmation of the plan.

 The purpose of section 1327 is to prevent a confirmed plan from collateral attack. 8 COLLIER ON BANKRUPTCY ¶ 1327.02[1] (Alan R. Resnick & Henry J. Sommers eds., 16th ed.). "There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may take later could be upset because of a later change or revocation of the order." *Id.* The Court finds that the *res judicata* effect of the plan binds the Debtors to treat Chase as a secured creditor. *See generally In re Berrouet,* 469 B.R. 393 (Bankr.N.D.Ga.2012) (Diehl, B.J.).

## II. *Debtors' request to Modify the Plan in accordance with Section 1329*

The Debtors argue that section 1329 of the Bankruptcy Code, in conjunction with section 502(j) and Rule 3008, provides authority for the Debtors to modify the plan by stripping the lien of Chase, which in effect changes the secured status of the claim to unsecured. However, the Debtors'

attempt to reconsider Chase's claim by means of section 502(j) through a Motion to Strip and a Plan Modification is not proper, for plan modifications brought under section 1329 are allowed only in limited circumstances.

 Section 1329 states that a plan can be modified at anytime after confirmation, but before the completion of plan payments, to do one of the following:

I. *Increase or reduce* the amount of payments on claims of a particular class;

II. Extend or reduce the time for such payments;

III. *Alter the amount* of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan, or

IV. Reduce amounts to be paid under the plan by the actual amount expended ... [to purchase health insurance for the debtor].

*See* 11 U.S.C. § 1329(a) (emphasis added). "As § 1329(a) indicates, the changes permitted by the Code concern modifications to the *amount and timing* of payments, not to the creation of a new obligation" or a deletion of an existing obligation on the estate. *In re Parmenter,* 527 F.3d 606, 609 (6th Cir.2008). The Code does not permit modification of the Plan for the purpose of reclassifying a claim or taking relief that would reclassify a claim. *See e.g. In re Parmenter,* 527 F.3d at 609 (citing *In re White,* 370 B.R. 713 (Bankr.

E.D.Mich.2007) (citing *In re Nolan,* 232 F.3d 528, 533 (6th Cir.2000))).

This Court is persuaded by the reasoning set forth in *In re Warren,* which held that section 1329(a) "does not expressly permit revaluation of collateral or reclassification of claims." *In re Warren,* 499 B.R. 914, 918 (Bankr.S.D.Ga.2013) (Warren, B.J.). "Since section 1329(a) is the gate through which all post-confirmation modifications must pass, the cramdown of a secured claim ... is proscribed post-confirmation...." *Id.* (citing *In re Nolan,* 232 F.3d 528, 532–33 (6th Cir.2000)). In *Warren,* the court applied the reasoning in *In re Coleman,* 231 B.R. 397, 401 (Bankr. S.D.Ga.1999) (Davis, B.J.), which involved the surrender of a vehicle post-confirmation, to a real estate setting factually similar to the present case and ultimately found that a lien strip post confirmation is not proper in accordance with section 1329. *See Warren,* 499 B.R. at 918 (citing *In re Coleman,* 231 B.R. 397, 401 (Bankr.S.D.Ga. 1999) (Davis, B.J.)).[3]

The Debtors argue that authority exists in the context of section 502(j) and Rule 3008 to strip Chase's lien and modify the Plan in accordance with section 1329. The Debtors cite *In re Johnson* and *In re Day* for the proposition that the Code permits a debtor to modify a confirmed plan and reclassify a secured claim as unsecured when collateral has been surrendered. *See In re Johnson,* 247 B.R. 904, 908 (Bankr.S.D.Ga.1999) (Dalis, B.J.); *see also In re Day,* 247 B.R. 898 (Bankr.M.D.Ga. 2000) (Hersher, B.J.). However, both cases are distinguishable from the case at

---

**3.** The *Warren* Court also cited the following cases where other courts have applied the same reasoning in the real estate context: *See In re Rutt,* 457 B.R. 97, 101 (Bankr.D.Colo. 2010) (denying the debtor's modification to strip off a second mortgage and treat the lender as an unsecured creditor two years after the Chapter 13 plan confirmation); *In re*

*Cruz,* 253 B.R. 638, 644 (Bankr.D.N.J.2000) ("The proposed post-confirmation modification impermissibly changes the treatment of the second mortgagee's allowed secured claim to a general unsecured claim which would receive a dividend of zero. This type of modification is not contemplated by 11 U.S.C. § 1329.").

bar because both involve the debtors' attempting to surrender collateral to secured creditors in full satisfaction of claims after unforeseen circumstances enveloped the debtor post-confirmation, and both cases pre-date more recent circuit, district, and bankruptcy authority.

■ Moreover, it is important to understand the distinction between allowance of claims and determination of secured status. In *Warren*, the court noted that the Eleventh Circuit "clarified that section 502, not section 506, governs the allowance/disallowance of claims." *Id.* (citing *In re Welzel*, 275 F.3d 1308, 1318 (11th Cir.2001)). Section 506 governs the classification of a claim. There is no connection between the two sections. It appears, however, that the Debtors' Motion to Strip seeks to reclassify the claim pursuant to section 506 through section 502(j).

The Court is persuaded by the reasoning in the *Warren* court, which provided that when a debtor attempts to strip a lien post-confirmation, the issue before the court is the determination of the secured claim. *See In re Warren*, 499 B.R. 914, at 920. The authority to determine classification of a claim as secured or unsecured is found in section 506, and not in section 502, which governs only the allowance/disallowance of a claim. "Under section 506 the value of the creditor's [secured] interest 'shall be determined . . . in conjunction with any hearing . . . on a *plan* affecting such creditor's interest.'" *Id.* (emphasis in

original) (citing 11 U.S.C. § 506(a)(1)). Due to the binding nature of a Chapter 13 plan confirmation, as discussed above, "if an existing confirmed plan values collateral, and thus the secured status of an allowed claim, that valuation cannot be changed absent a modification of the plan; and modification of a confirmed plan is narrowly limited by section 1329." *Id.* at 921.

■ Therefore, the Debtors' only remedy in the present case, just as the debtors in *Warren*, is a plan modification and not reconsideration of the claim under section 502(j). "Section 1329 allows, *inter alia,* the debtor to reduce the amount payable to a secured creditor; however, this reduction is only 'to the extent necessary to take account of any *payment* of such claim.'" *Id.* at 921.(citing 11 U.S.C. 1329(a)(3)) (emphasis in original). As discussed above, section 1329 does not allow a debtor to retroactively reclassify the status when the confirmed plan provided for treatment of the claim. The Debtors are not allowed to modify their Chapter 13 plan in order to strip Chase's lien post-confirmation in accordance with section 1329.[4]

■ Assuming *arguendo,* that the Debtors' Plan Modification could be interpreted as a Motion to Reconsider Chase's claim, the Court finds that "cause" does not exist under section 502(j) to reconsider Chase's claim. Section 502(j) provides

---

4. The Debtors argued that prohibiting a modification of a confirmed Chapter 13 Plan would invalidate section 502(j). The Court disagrees. Section 502 provides for the overall allowance or disallowance of claims. 11 U.S.C. § 502(b). Allowance of a claim is predicated on determining an amount owed, not the amount secured. *Id.* Section 502(j) reconsiders such a decision, only. Correspondingly, section 1329 provides an outlet for modifying a confirmed plan for the purpose of changing the amount paid to a par-

ticular class. *See* 11 U.S.C. § 1329(a)(1). Accordingly, the two provisions appear consistent with one another. Section 502(j) provides for the reconsideration of the amount of a claim, and section 1329(a)(1) creates a method to execute the reconsidered amount. The Debtors do not argue that Chase's claim is not allowed, only that its classification should change under section 506(d). Consistently, neither section 502(j), which does not affect section 506, nor section 1329 provide for such a remedy.

that "a claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). Section 502 also provides that "a reconsidered claim may be allowed or disallowed based on the equities of the case." *Id.* Courts have held that a reconsideration of a claim "according to the equities of the case," is not an unlimited license to alter allowed claims. *See Warren,* 499 B.R. at 919.

Before a court can reach the question of equity under section 502(j), it must first determine whether "cause exists." *Warren,* 499 B.R. at 918–19 (citing *In re Jones,* 2000 WL 33673759, at *2 (Bankr.M.D.N.C. Aug. 28, 2000); *In re Clark,* 172 B.R. 701, 704–05 (Bankr.S.D.Ga. 1994); *In re Durham,* 329 B.R. 899, 903 (Bankr.M.D.Ga.2005)). "Cause" is not expressly defined in the Bankruptcy Code, and courts have substantial discretion in deciding what constitutes "cause" when deciding whether to grant a motion for reconsideration under section 502(j). *Warren,* 499 B.R. at 919 (citing *In re Gomez,* 250 B.R. 397, 400–01 (Bankr.M.D.Fla. 1999)).

This Court has set forth the following factors to determine if "cause" exists under section 502(j):

(1) whether granting review will prejudice the debtor or other creditors;

(2) the length of delay and its impact on efficient court administration;

(3) whether the delay was beyond the reasonable control of the person whose duty it was to perform;

(4) the presence of good faith;

(5) whether clients should be penalized for their counsel's mistake or neglect;

(6) whether the claimant has a meritorious claim.

*In re Bernard,* 189 B.R. 1017 (Bankr. N.D.Ga.1996) (Drake, J.). In considering the factors, as listed above, the Court finds that "cause" does not exist to reconsider Chase's claim. If Chase's claim were to be determined unsecured, then it would take a pro rata share of the plan payments, thereby reducing the funds to the other unsecured creditors—prejudicing them. A reclassification of Chase's claim from secured to unsecured also prejudices Chase. Additionally, the length of delay in filing the present pleadings was over 33 months after the Confirmation of the Chapter 13 Plan. Certainly, the filing of the Motion to Strip was at the convenience of the Debtors, and, by the Debtors' own admission, the lien was "unsecured" at the time of filing. However, no justification was presented as to the delay. *Debtors' Br.* pg. 8, Doc. No. 93. Moreover, given the length of delay and Debtors' control of the situation, it is difficult to accept that the Motion to Strip was filed in good faith. The Court recognizes that the Debtors appear to have a meritorious claim, based on the facts presented; however, this factor does not outweigh the others. Because of prejudice to the creditors and since the length of the delay was within the reasonable control of the Debtors, or their attorney, the Court finds that "cause" does not exist. Additionally, the Court finds that because of the length of the delay in the filing of the Motion to Strip and the Plan Modification, it does not appear to be in good faith. The Court is always reluctant to penalize a client in a situation that could have been avoided; however, the Debtors had the opportunity to file a Motion to Strip at any time prior to confirmation. The Court finds that, even if section 502(j) is applicable, "cause" does not exist in accordance with *In re Bernard* to reconsider Chase's claim.

Other courts have analyzed section 502(j) in conjunction with the language of Rule 9024:

[C]ourts generally agree that Bankruptcy Rule 9024, which incorporates FED. R.CIV.P. 60, sets forth the standards for reconsideration of claims and helps define 'cause' under § 502(j)." *In re Watkins,* 240 B.R. 735, 739 (Bankr.C.D.Ill. 1999); *see also In the Matter of Colley,* 814 F.2d 1008, 1010 (5th Cir.1987); *Clark,* 172 B.R. at 705; *In re Coffman,* 271 B.R. 492, 498 (Bankr.N.D.Tex.2002); *Amtech Lighting Servs. Co. v. Payless Cashways (In re Payless Cashways, Inc.),* 230 B.R. 120, 137 (8th Cir. BAP 1999) ("In essence, then, Rule 60(b) helps to define the term 'cause' in § 502(j) and provides the applicable criteria for reconsidering claims." (citing *Employment Sec. Div. v. W.F. Hurley, Inc. (In re W.F. Hurley, Inc.),* 612 F.2d 392, 396 n. 4 (8th Cir.1980))). FED. R. BANKR.P. 9024 states in relevant part: [Rule 60](b) On motion and just terms, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence ...;

(3) fraud ..., misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

*Warren,* 499 B.R. at 919.

 If the Court were to analyze whether "cause" exists in accordance with Rule 9024, the Court would find that the Debtors cannot satisfy any of the factors listed above. The Debtors set forth no evidence of mistake, excusable neglect, newly discovered evidence, fraud or any-

thing resembling the reasons set forth in Rule 9024. Additionally, the Court finds insufficient grounds to grant the Debtors relief based upon equitable grounds in the catch-all category of Rule 60(b)(6). Rule 60(b)'s catchall provision is "an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances, and that absent such relief, an extreme and unexpected hardship will result." *Saunders v. United States,* 380 Fed.Appx. 959, 964 (11th Cir.2010). No exceptional circumstances exist in the record that warrant granting relief in accordance with Rule 60(b)(6).

### CONCLUSION

The Debtors' attempt to use the reconsideration procedure of section 502(j) in the context of a Plan Modification under section 1329 is not appropriate nor permissible, as the *res judicata* effect of the confirmed plan binds the Debtors and Chase to the terms of the plan.

Accordingly, it is hereby ORDERED and ADJUDGED that the Debtors Motion to Strip the lien of Chase is **DENIED;**

Furthermore, it is hereby ORDERED and ADJUDGED that the Debtors' Plan Modification is **DENIED;**

It is further ORDERED and ADJUDGED that the Debtor's Motion to Compel the Trustee to Sign an Order is **DENIED.**

The Clerk is **DIRECTED** to serve a copy of this ORDER on the Debtors, Debtors' Counsel, Chase Home Finance, LLC, and the Chapter 13 Trustee.

**IT IS ORDERED.**