**In re Ronald STEWART and Jayne Whitfield, Marlene and Bruce Burley, Michael and Michele Billardello, Fredwin and Rosalinda Carr, Joseph and Lynn Burns, Elaine Calhoun, Carmen Dunklin, Karla Randall, Rob-**ert Hinson, Randy and Yvonne Scott, Jonathon and Francine Evans, Harold King and Teresa Graves–King, Alfredo Acosta, James and Melissa Sanders, Donald and Joselyn Lowrance, Timothy McIver, Nancy Drake, Debtors.

Nos. 02–54765–R, 02–66793–R, 02–55879–R, 02–59859–R, 02–59961–R, 02–60370–R, 02–60392–R, 02–60881–R, 02–60991–R, 02–62106–R, 02–62760–R, 02–63775–R, 02–63934–R, 02–65394–R, 02–66780–R, 02–65275–R, 02–64662–R.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

March 21, 2003.

Michelle Marrs, Marrs & Terry, PLLC, Ann Arbor, MI, for debtors.

Robert L. Dzialo, Rochester Hills, MI, Richardo I. Kilpatrick, Detroit, MI, for creditor.

*Opinion Regarding Objection to Confirmation*

STEVEN W. RHODES, Chief Judge.

The issue before the Court in these cases is whether the provision in this district's chapter 13 model plan, which sets forth the order in which secured creditors will be paid, violates the bankruptcy code. Briefs have been filed by DaimlerChrysler, Standard Federal, Sterling Bank & Trust, Equicredit, the chapter 13 trustee and a number of the debtors affected. This opinion supplements the Court's decision given in open court on February 6, 2003.

I.

L.B.R. 3015–1(a)(5) requires a chapter 13 plan to contain "a statement of the order in which claims are to be paid." The Model Plan of the Eastern District of Michigan provides:

> **ORDER OF PAYMENT OF CLAIMS:**
> Class One claims shall be paid in advance of others, then Classes Two and Three in advance of all remaining classes, then Classes Four and Five, then Class Six, and then Classes Seven and Eight shall be paid as stated in each respective section. [LBR 3015–1(a)(5) (E.D.M.)]

(See Chapter 13 Model Plan II.I)

The claims of DCX are classified as Class 5 claims. The mortgage claims are Class 2—continuing claims.

DCX contends that as a secured creditor, it must be treated the same as other secured creditors and cannot be placed in a different class and paid after other secured creditors. DCX argues that the order of payments in the Model Plan violates the Code because such an order of payments is not required under the Code. DCX further contends that simply because the Code prohibits modification of home mortgages, this does not mean that they are entitled to a "super priority." DCX argues that it is unfair to require it to bear the burdens associated with a debtor's failure to perform under the plan. DCX contends that if the debtor's plan is feasible, funds should be available to pay all secured creditors concurrently.

The parties opposing the position advanced by DCX generally argue that the Code not only permits secured creditors to be classified separately, it actually requires it in most circumstances. These parties argue that the Code grants special protection to home mortgage creditors by prohibiting the plan from modifying mortgages on the debtor's principal residence, and the order of payments in the model plan facilitates that prohibition.

## II.

■ DCX relies on 11 U.S.C. § 1322(a)(3) in support of its argument that as a secured creditor, it must be treated the same as other secured creditors. Section 1322(a)(3) provides that, if the plan classifies claims, it must provide the same treatment for each claim within a particular class. DCX argues that classifying secured creditors into different classes violates the Code. However, DCX provides no support for this argument. There is no provision which prohibits a debtor from separately classifying secured creditors. As Judge Keith Lundin states in his treatise on Chapter 13 Bankruptcy:

Typically, each secured claim in the Chapter 13 plan is in a class by itself. Each secured claim is usually provided a unique treatment-a different value for the collateral, a different preferred monthly payment (if any), a different interest rate or some other treatment (surrender, for example) specific to that secured claim. It is usually true that the collateral securing each secured claim is unique. The courts have long recognized that each secured claim can be placed in a separate class.

Keith Lundin, Chapter 13 Bankruptcy § 103.1 at 103–1 (3d ed.2000)(footnote omitted).

Judge Lundin goes on to recognize the necessity of separately classifying secured claims:

11 U.S.C. § 1322(a)(3) mandates that if the Chapter 13 plan classifies claims, the plan must "provide the same treatment for each claim within a particular class." If Chapter 13 debtors cannot separately classify secured claims, then all secured claims must be in the same class. If all secured claims are in the same class, then all secured claims must be provided the same treatment under § 1322(a)(3). This is essentially impossible in a Chapter 13 case because each secured claim holder has unique collateral, and the monthly payment, interest rate and valuation with respect to each secured claim will be different. If Chapter 13 debtors cannot separately classify secured claims, it is likely that no Chapter 13 plan can be confirmed when the debtor has more than one secured claim to be dealt with through the plan.

*Id.* at 103–2 (footnote omitted). *See also Foster v. Heitkamp (In re Foster),* 670 F.2d 478, 488 (5th Cir.1982) (Secured claims in Chapter 13 must ordinarily be classified separately because each involves a different claim to property of the debtor.).

Accordingly, the Court concludes that separately classifying secured vehicle claims and home mortgage claims does not violate the Code, and indeed is necessary because such claims simply cannot legally be provided the same treatment.

■ Likewise, the Code does not require, or even permit, the plan to treat all secured claims the same. Section 1325(a)(5) provides that the court shall confirm a plan if:

(5) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim.

11 U.S.C. § 1325(a)(5).

DCX seeks to have the plan provide that it will be paid concurrently with other secured creditors. However, nothing in

the Code requires that treatment for secured creditors. As noted, the only statutory requirements for the treatment of a secured claim are: (1) that the creditor retain its lien; and (2) that the present value of the property to be distributed under the plan be equal to the allowed amount of the claim. The Model Plan meets those requirements.

It appears that the primary concern of DCX is that if, during the life of the plan, the debtor defaults in plan payments and then later resumes payments, the funds from those resumed payments will be paid to the mortgage creditor first and then later to DCX. Beyond doubt, experience demonstrates that many debtors do default in plan payments after confirmation, and DCX properly states the consequences to it of a default in the debtor's payments. However, this risk of default does not justify the relief that DCX seeks, either legally or factually. Under 11 U.S.C. § 1325(a)(6), as a prerequisite of confirmation, the Court must find that "the debtor will be able to make all payments under the plan[.]" Thus, if the risk of default is too great, the Court must deny confirmation. Otherwise, if the Court makes the required finding—that the debtor will be able to make all plan payments, that finding is binding on all interested parties, including DCX, and it is inappropriate to impose in the plan a provision for the ordering of payments that presumes otherwise.

■ Ultimately, the required contents of a plan are for Congress to determine, and as the Court concluded previously, nothing in the Code explicitly requires the plan provision that DCX seeks. It is not appropriate for the Court to interfere with an otherwise legal payment priority ordering provision in a plan on the chance that the debtor may default. Congress could easily require the result that DCX seeks, but it has not.

It is important to note that this result does not leave DCX without remedies in the event that a debtor's default prejudices DCX's position on its collateral. It is not required to stand by and watch its collateral position deteriorate while the debtor defaults. In that event, DCX can file a motion for relief from the stay and argue that the default constitutes "cause" for relief from the stay under § 362(d)(1). DCX might also move to dismiss the case for "cause" under § 1307(c)(6) and argue that the default is a material default because of the prejudice to its collateral position. In appropriate circumstances, it can also seek expedited consideration of these motions under Fed. R. Bankr.P. 9006(c). If the evidence establishes that the debtor's default prejudices the creditor's collateral position, and either dismissal or relief from the stay is granted, then DCX can pursue its state law remedies to recover on its claim. Similarly, if the debtor seeks to modify the plan to address the default, as sometimes happens, DCX can object to confirmation of the modified plan with the same argument.

The position that DCX takes in these cases is certainly understandable. In bankruptcy, every creditor naturally wants its claim paid sooner rather than later in order to minimize the risk and consequences of default. As the United States Court of Appeals for the Sixth Circuit amusingly but keenly observed when it borrowed the famous Woody Allen joke in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443 (6th Cir. 1994):

Understandably, creditors of bankrupt debtors often feel like restaurant patrons who not only hate the food, but think the portions are too small. To press the analogy, they also don't like

having to wait in line for a table, possibly being seated only to find out the kitchen has just closed. The bankruptcy court is a little like a soup kitchen, ladling out whatever is available in ratable portions to those standing in line; nonetheless, scarcity begets innovation in the hungry creditor's quest to get a little more than the next fellow.

*Id.* at 1445 (footnote omitted).

The Bankruptcy Code reflects a careful balance of debtors' rights and creditors' remedies. The innovative remedy that DCX now seeks is simply not presently available. Accordingly, DCX's objection to the order of payments in the model plan is overruled.