**In re Terry COFFMAN and Lana Coffman, Debtors.**

**No. 07–56896.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

Sept. 24, 2008.

Erin E. Strapp, Rauser & Associates, Columbus, OH, for Debtors.

## MEMORANDUM OPINION ON OBJECTION OF GMAC TO CHAPTER 13 PLAN

C. KATHRYN PRESTON, Bankruptcy Judge.

### I. Introduction

This cause came on for hearing on March 6, 2008 and April 3, 2008 to consider confirmation of the proposed plan filed by Chapter 13 debtors Terry Coffman and Lana Coffman ("Debtors") and the objection filed by GMAC, as supplemented ("Objection") (Docs.21, 35). Present at the hearing were Lawrence Landon representing the Debtors, Theodore A. Konstantinopoulos and David Powell representing GMAC, and John Kennedy representing the Chapter 13 Trustee, Frank Pees ("Trustee").

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this District. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

GMAC, which is the lessor on a vehicle lease being assumed by the Debtors ("Lease"), makes a two-prong objection to confirmation. First, GMAC contends that, if the Trustee is unable to make the Debtors' mortgage payments and the payments due on the Lease, then GMAC must receive a pro rata share of the available funds. GMAC also argues that it must receive full payment of its prepetition Lease arrearage claim by the date the Lease terminates ("Lease Termination Date"). The Trustee and the Debtors contend that neither is a prerequisite to confirmation.

For the reasons stated below, the Court finds that GMAC's Lease claim need not be treated in the same manner as the

mortgage claims against the Debtors. The Court also concludes that the Debtors' plan must provide for full payment of GMAC's arrearage claim by the Lease Termination Date. The Court, therefore, sustains the Objection in part and overrules it in part.

## II. Background

### A. GMAC's Lease Claim

On October 7, 2006, Lana Coffman entered into the Lease, a GMAC SmartLease Agreement for the lease of a new 2007 Pontiac GT convertible ("Vehicle"). The Lease requires 48 monthly payments of $464.86, commencing October 7, 2006 and ending September 7, 2010, with the Vehicle to be returned in October 2010.

On August 30, 2007 ("Petition Date"), Ms. Coffman and her spouse filed a joint voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code along with their schedules of assets and liabilities (Doc. 1). The Debtors listed GMAC's claim in an unknown amount on Schedule D (Creditors Holding Secured Claims) and identified the Lease on Schedule G (Executory Contracts and Unexpired Leases). On September 27, 2007, GMAC timely filed a proof of claim in the total amount of $18,664.12. Of this amount, GMAC asserted that $17,199.82 was for the balance of payments due under the Lease after the Petition Date and $1,464.29 was for arrearages and other charges due prior to the Petition Date. GMAC stated on the proof of claim form that its entire claim was an unsecured, nonpriority claim.

### B. The Plan

The Debtors filed their original Chapter 13 Plan on the Petition Date and thereaf-

ter filed amendments (Docs.18, 27), culminating in the filing of a third amended Plan on December 13, 2007 (Doc. 31) (hereinafter, the "Plan").[1] Pursuant to the Plan, the Debtors propose to pay to the Trustee for disbursement to their creditors the sum of $3,464.86 per month for 37 months and thereafter $3,000 per month for the remainder of the term of the Plan. The Trustee, who recommends that the Plan be confirmed, indicates that the dividend to creditors will be 100% and that the length of the Plan is 51 months (Doc. 32). If the Debtors make all payments under the Plan as proposed, the Plan will be fully consummated by December 2011.

The Plan provides that, upon confirmation and after deduction of his fee, the Trustee will disburse pre-confirmation adequate protection payments to certain secured creditors and pre-confirmation Lease payments to GMAC in the contractual amount. The Plan also provides that the $2,525 balance owed by the Debtors for attorneys fees will be paid in monthly installments of $700 and will be paid in full after payment of Class 1 claims and concurrently with Class 2 claims—the class in which, as described below, GMAC's claim falls.

The Plan establishes five classes of claims against the Debtors. Two of these classes—Class 3 (priority claims) and Class 5 (general unsecured claims)—are not at issue in the instant case. Class 1, Class 2 and Class 4 are at issue. Class 1 is made up of three creditors holding mortgage loans. The loans held by two of these creditors (Wells Fargo and OCWEN) are secured by mortgages on the Debtors' residence, and the loan held

---

1. During the hearing held on March 6, 2008, the Debtors advised the Court that they intended to further amend the Plan to resolve the Objection. Upon further reflection and after argument to the Court by the Trustee in support of the Plan, however, the Debtors filed a memorandum in support of confirmation (Doc. 38), stating that they had decided to go forward on the Plan as filed on December 13, 2007.

by the third (Homecomings Financial) is secured by a mortgage on rental property owned by the Debtors. The Plan provides that the Trustee will make current monthly payments due under the loan documents during the term of the Plan; these are commonly referred to as "conduit payments." The Plan further states that "[i]f sufficient funds are not available to make a full monthly payment on all the Class 1 claims, the available funds should be distributed to the Class1 creditors on a pro rata basis based on the unpaid specific monthly payments due through that month's distribution."

Class 2 (secured claims and unexpired leases for which the Plan designates monthly payments) includes GMAC, which will receive conduit payments after confirmation. Under the Plan, the Debtors will assume the Lease, and GMAC will receive postpetition payments in the amount set forth in the contract for the remaining term of the Lease. The Plan also provides that, "[i]f sufficient funds are not available to make a full monthly payment on all the Class 2 claims and attorney fees, the available funds should be distributed to the Class 2 creditors and [the Debtors'] attorney on a pro rata basis based on the unpaid specific monthly payments due through that month's distribution."

Class 4 includes prepetition arrearage claims. As of the Petition Date, the Lease and each of the Debtors' mortgage loans were in arrears; $1,394.58 is the arrearage amount owed on the Lease. The Plan provides for the payment of these arrearage claims over the term of the Plan pro rata, in full concurrently with priority claims.

## C. GMAC's Objection

GMAC objects to confirmation of the Plan on two grounds. First, GMAC contends that it is entitled to a pro rata share of the available funds if the Trustee is unable to make full conduit payments on the Debtors' mortgages and on the Lease. GMAC argues that failure to provide for such pro rata payment violates the Bankruptcy Code in two ways. According to GMAC, the Plan unfairly discriminates against GMAC in that it proposes disparate treatment of claimants receiving conduit payments. In addition, GMAC contends that because the Plan fails to provide for pro rata payment of the Lease and the mortgages in Class 1, the Plan fails to provide adequate assurance of future performance of the Lease.

GMAC's second basis for objection is that the Plan must provide for full payment of its arrearage claim by the Lease Termination Date, which is October 6, 2010, rather than the date by which the Debtors are scheduled to complete Plan payments.[2] According to GMAC, failure to pay its arrearage claim in full by the Lease Termination Date violates the requirement that the Debtors cure or provide adequate assurance of prompt cure of Ms. Coffman's monetary prepetition defaults.

## III. Discussion

### A. Applicable Requirements for Plan Confirmation

The Plan may be confirmed only if it meets certain specified requirements, in-

---

**2.** In its initial response to the Plan (Doc. 21) GMAC made two additional objections: that the Plan is not feasible and that it must provide GMAC immediate relief from the automatic stay upon termination of the Lease. GMAC, however, is no longer pursuing those objections. GMAC withdrew its feasibility objection during the hearing. In addition, GMAC did not prosecute its objection based on the relief-from-stay issue at the hearing or in its supplement. Moreover, GMAC has not apprised the Court of—and the Court is unaware of any—authority supporting the view that a Chapter 13 plan must provide for immediate relief from the automatic stay upon termination of an assumed lease.

cluding compliance with the provisions of Chapter 13 and with the other applicable provisions of the Bankruptcy Code. *See* 11 U.S.C § 1325(a)(1) (a court may confirm a Chapter 13 plan only if "the plan complies with the provisions of this chapter and with the other applicable provisions of this title"). GMAC raises the specter of unfair discrimination, which is addressed in Chapter 13 of the Bankruptcy Code in § 1322(b)(1). Section 1322(b)(1) provides:

> (b) [T]he plan may—
>
> (1) designate a class or classes of unsecured claims, as provided in section 1122 of this title, *but may not discriminate unfairly against any class so designated;* however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims[.]

11 U.S.C. § 1322(b)(1) (emphasis added).

Under § 1322(b)(7), a Chapter 13 plan may, "subject to section 365 of [the Bankruptcy Code], provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section[.]" Also at issue, therefore, is § 365, which states in pertinent part as follows:

> (a) [T]he trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default . . . and
>
> . . .

> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(a) and (b).

## B. Pro Rata Payment

### 1. Unfair Discrimination

■ GMAC contends that the Plan unfairly discriminates against it by providing for payment of the Debtors' mortgages first in the event that the Debtor remits insufficient funds to make all Plan payments. In support of its unfair discrimination argument, GMAC relies on two decisions. In one of the decisions—*In re Hosler,* 12 B.R. 395, 396 (Bankr.S.D.Ohio 1981)—the debtors' Chapter 13 plan proposed a 100% dividend to health care providers but only a 20% dividend to their other unsecured creditors. One of those slated to receive a 20% dividend objected to confirmation on the basis of unfair discrimination. The court held that the debtors had not established the fairness of making a 100% payment on certain unsecured claims but only a 20% payment on all other unsecured claims. In the other opinion—*In re Riggel,* 142 B.R. 199, 203 (Bankr.S.D.Ohio 1992)—the debtor's Chapter 13 plan proposed recoveries for different classes of unsecured creditors ranging 17% on the low end to 100% on the high end. The Chapter 13 trustee argued that this payment scheme violated § 1322(b)(1). The court held that "the debtor has not established a reasonable basis for the treatment proposed for favored classes of unsecured claims." *Riggel,* 142 B.R. at 203.

■ *Hosler* and *Riggel* are inapplicable in the instant case for two reasons. First, in the Plan the Debtors propose to pay all of their creditors—including claims in Class 1 and GMAC's Class 2 claim— 100% of their claims. Second, § 1322(b)(1)'s prohibition of unfair discrimination applies only when comparing the

treatment of one class of unsecured claims to another class of unsecured claims. In the instant case, the Class 1 claims are secured claims while GMAC filed its claim as an unsecured, nonpriority claim. Additionally, the foundation for the allegation of unfair discrimination is the possibility that the Debtors might default in making their Plan payments. But "[i]t is not appropriate for the Court to interfere with an otherwise legal payment priority ordering provision in a plan on the chance that the debtor may default." *In re Whitfield*, 290 B.R. 302, 305 (Bankr.E.D.Mich.2003). In fact, as a condition precedent to confirming a Chapter 13 plan, the Court has an independent obligation to find that the Plan is feasible and proposed in good faith. 11 U.S.C. § 1325(a). These requirements have been met in this case. The Court, therefore, rejects GMAC's unfair discrimination argument.

### 2. Adequate Assurance of Future Performance

GMAC contends that it has not been provided adequate assurance of the Debtors' future performance under the Lease. To address this issue, GMAC posits that the Plan must provide for pro rata payment of the monthly payment due on the Lease along with Class 1 mortgage payments. The Court concludes that the Plan need not do so.

■ In order to provide adequate assurance of future performance "a debtor need not ... provide an absolute guarantee of performance [but instead] [i]t must simply appear[ ] that the rent will be paid and other lease obligations met." *In re M. Fine Lumber Co.,* 383 B.R. 565, 573 (Bankr.E.D.N.Y.2008) (citations and internal quotation marks omitted). In Chapter 13, "[s]atisfying the requirement in § 365(b)(1)(C) that the debtor provide adequate assurance of future performance is typically accomplished ... by providing

for the regular contract payments through the plan." 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 173.1 at 173–9 (3d ed. 2000 & Supp.2004). This affords the nondebtor lessor "the security of receiving payments directly from the Trustee." *Ford Motor Credit Co. v. Parmenter (In re Parmenter),* 527 F.3d 606, 610 (6th Cir.2008).

Pursuant to the Plan, the Debtors have provided for assumption of the Lease and for regular payments to GMAC through the Trustee. Indeed, in its supplemental objection, GMAC acknowledged that "Debtors have proposed sufficiently monthly payments into the [P]lan for the timely payment of both the conduit mortgage payments as well as the conduit lease payments." (Doc. 35). Moreover, the Court has found that the Plan is feasible. The Court, therefore, concludes that the Debtors have provided GMAC with adequate assurance of future performance under the Lease.

### C. Prompt Cure

■ Finally, GMAC insists that the Plan must provide for cure of its prepetition arrearage claim by the Lease Termination Date. Under § 365(b)(1)(A), to assume a lease there must be a cure of defaults or adequate assurance that the defaults will be "promptly" cured. Some courts have held that, "absent evidence to the contrary, six months in consumer cases would be considered the maximum permissible period of time in which to cure a lease arrearage under 11 U.S.C.A. § 365(b)(1)." *In re Reed,* 226 B.R. 1, 2 (Bankr.W.D.Ky.1998). The *Reed* court added that this is a "fairly lengthy period[.]" *Reed,* 226 B.R. at 2. Courts also have held that defaults must be cured prior to the end of the lease term to be considered prompt. *See In re R/P Intern. Techs., Inc.,* 57 B.R. 869, 873 (Bankr. S.D.Ohio 1985) ("Because the proposed payment period for the cure is virtually coextensive with the claimed remaining life

of the lease, it cannot be said ... that the period of payment is sufficiently less than the complete period of the relationship between the parties that it is 'prompt' cure."). In the instant case, the Court need not decide whether a default must be cured prior to the end of the term of the lease or whether six months or some other period of time is insufficiently prompt. GMAC requests only that the cure be effectuated by the Lease Termination Date. The Court believes that this is a reasonable request and that a cure period extending beyond the Lease Termination Date to the to the date of completion of the Plan payments (some three years hence) would not be prompt. *See In re Morgan,* 181 B.R. 579, 584 (Bankr. N.D.Ala.1994) ("Clearly the right to cure does not extend beyond the term of the lease."). The Court, therefore, holds that the Plan must provide for full payment of GMAC's arrearage claim by the Lease Termination Date.

## IV. Conclusion

In light of the foregoing, the Court concludes that: (i) the Plan may be confirmed even though it does not provide for pro rata payment of the conduit Lease claim with the Class 1 conduit mortgage claims in the event that the available funds are insufficient to make payments due on all of them; and (ii) to be confirmable the Plan must provide for full payment of GMAC's arrearage claim by the Lease Termination Date. Accordingly, the Court **SUSTAINS** the Objection in part and **OVERRULES** it in part. Within 10 days from the date of entry of this Opinion, the Debtors shall file an amended Plan consistent with the Opinion.

**IT IS SO ORDERED.**